IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2012 APR -5 P 3: 18

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| Dawn M. Jenkins | Civil Action |
| Plaintiff | |
| v. | |
| AFNI, INC.;  DIVERSIFIED CONSULTANTS, INC.; | No. _____ |
| EQUIFAX INFORMATION SERVICES, LLC and | |
| EXPERIAN INFORMATION SOLUTIONS, INC, | |
| Defendants | |

## COMPLAINT AND TRIAL BY JURY DEMANDED

### JURISDICTION AND VENUE

1.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p).  This Court has

supplemental jurisdiction of the state law claims asserted herein under 28 U.S.C. §

1367(a) and pendant jurisdiction over the state common law claims asserted herein.

Venue is properly laid pursuant to 28 U.S.C. § 1391(b).

### PARTIES

2.     The plaintiff is an adult resident of the state of Massachusetts, city of Lynn, county of

Essex.

3.    The plaintiff is a "consumer" within the meaning of the FCRA [15 U.S.C. § 1681a(c)] as well as within the meaning of the FDCPA [15 USC § 1692a(3).

4.    AFNI, INC hereafter ("Anderson"), is an Illinois and Arizona corporation duly authorized and qualified to do business in the State of Massachusetts.

5.    Anderson is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

6.    Anderson is a "debt collector" within the meaning of the FDCPA [15 USC § 1692a(6)].

7.    DIVERSIFIED CONSULTANTS d/b/a FLORIDA DIVERSIFED CONSULTANTS, INC. hereafter ("Diversified") is a Florida corporation, duly authorized and qualified to do business in the State of Massachusetts.

8.    Diversified is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

9.    Diversified is a "debt collector" within the meaning of the FDCPA [15 USC § 1692a(6)].

10.   EXPERIAN INFORMATION SOLUTIONS, INC., hereafter ("Experian") is an Ohio corporation, duly authorized and qualified to do business in the State of Massachusetts.

11.   Experian is a "consumer reporting agency" within the meaning of the FCRA [15 U.S.C. § 1681a(f)].

12.   EQUIFAX INFORMATION SERVICES, LLC hereafter ("Equifax") is a Georgia corporation, duly authorized and qualified to do business in the State of Massachusetts.

13.   Equifax is a "consumer reporting agency" within the meaning of the FCRA [15 U.S.C. § 1681a(f)].

**PRELIMINARY STATEMENT**

14. This action is for actual, statutory and punitive damages, costs and statutory attorney's fees and arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, ("FDCPA") 15 U.S.C. §1692 *et seq.*; the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681 *et seq.*; the Massachusetts Fair Credit Reporting Act ("MGL c 93§ 50-68"); the Telephone Consumer Protection Act ("TCPA"), 47 USC § 227 et seq.; the Regulation of Business Practice and Massachusetts Protection Act ("M.G.L. c. 93A § 1-11"); the Code of Massachusetts Regulations ("CMR"), 209 CMR 18.00 *et seq.* aka M.G.L. 93 § 24-48 and out of the invasions of Plaintiff's personal privacy by the Defendants and their agents in their illegal efforts to collect a non-existent consumer debt alleged to be owed by the plaintiff as set forth below.

15. In addition, the plaintiff seeks actual and punitive damages on her common law pendant state claims for defamation and invasion of privacy, an injunction barring collection agency defendants Anderson and Diversified from continuing to attempt to collect any charges from the plaintiff pertaining to the "Account" or from continuing to report the "Account" to any third party as belonging to the plaintiff.

16. Anderson a debt collection agency violated the FCRA by failing to conduct a proper investigation of the plaintiff's disputes she had filed with the credit reporting agency defendants. Those disputes claimed that the plaintiff was not liable for the Sprint "collection account" appearing on her credit reports. Anderson knew or should have known that the debt was non-existent and failed to direct such consumer reporting agencies to delete inaccurate information about the plaintiff from the files maintained by them.

17. In addition, Anderson willfully and maliciously defamed the plaintiff by repeatedly reporting information about her to various third parties since April 2010, which it knew, or reasonably should have known, was false.   As a result of such actions and conduct, the plaintiff suffered damage, which she is permitted to recover for in this action and she is also entitled to an award of punitive damages.

18. Upon information and belief Anderson sold, assigned or passed the non-existent debt, hereafter "Account", to Diversified prior to mailing plaintiff verification of the "Account" in violation MGL and FDCPA.

19. The debt collection agency defendants Anderson and Diversified violated the FDCPA and MGL by failing and refusing to provide validation of the alleged "Account" in response to a request for same.

20. The debt collection agency defendants Anderson and Diversified have attempted to collect an "Account" the natural consequence of which was to harass, oppress, or abuse the plaintiff. The credit reporting agency defendants Experian and Equifax violated the FCRA and MGL by failing to follow reasonable procedures to assure maximum possible accuracy when preparing credit reports purportedly concerning the plaintiff.

21. The credit reporting agency defendants also violated the FCRA and MGL by repeatedly issuing credit reports to various third-parties, purportedly pertaining to the plaintiff, which contained an erroneous entry which did not legitimately belong to the plaintiff, despite having received actual notice, on repeated occasions, that such entry was not hers or was otherwise inaccurate.

22. The credit reporting agency defendants repeatedly violated their obligation under the FCRA and MGL to properly investigate disputed items in the plaintiff's credit file maintained by them.

23. The credit reporting agency defendants defamed the plaintiff and violated her privacy by repeatedly publishing to third-parties information purportedly about her which was false and which caused her to suffer injury.

24. The credit reporting agency defendants provided the plaintiff's credit report, containing a non-existent collection account, to third-parties, who then used such reports to make creditworthiness determinations about her and, as a result, her credit score was adversely affected and her current credit standing with her legitimate creditors was adversely affected.

25. The credit reporting agencies willfully violated various provisions of the FCRA, and MGL as set forth herein.

26. The credit reporting agency defendants also willfully and maliciously defamed the plaintiff by repeatedly reporting information about her to various third parties which they knew, or reasonably should have known, was false.

27. As a result of such actions and conduct the plaintiff suffered damage which she is permitted to recover for in this action and she is also entitled to an award of punitive damages.

28. The plaintiff further alleges that as a direct and proximate result of the each of the defendants' actions, conduct and omissions she suffered actual damage including, but not limited to, damage to her existing credit accounts, damage to her reputation,

emotional distress, annoyance, aggravation, frustration, and legal fees to secure the defendants' compliance with the law.

## FACTUAL BACKGROUND

### I. FACTS PERTAINING TO ANDERSON AND DIVERSIFIED IN THEIR CAPACITY AS DEBT COLLECTORS

29. Anderson is a debt collector and a furnisher of information to the three national credit reporting agencies, such as Experian, Equifax and TransUnion. The information which it furnishes affects the credit history, experience, and credit rating of this plaintiff.

30. TransUnion is not a defendant in this matter.

31. On or about April 2010, Anderson was allegedly hired by Sprint and furnished Experian and Equifax information about a non-existent collection account hereinafter ("Account") allegedly owed by the plaintiff.

32. Anderson called plaintiff on several occasions demanding payment on a non-existent Sprint account. Plaintiff told Anderson repeatedly that she had no such account.

33. Plaintiff requested that Anderson provide documentation verifying the validity of the "Account" and demanded that it cease further communications with her.

34. Plaintiff denies ever having any established business relationship, contractual agreement for credit, loans, or services with Anderson, or the alleged creditor Sprint.

35. Anderson failed and refused to provide any documentation whatsoever supporting its contention that the plaintiff was legally obligated to pay the "Account".

36. The calls continued and plaintiff had to constantly stop what she was doing and screen her calls, eventually she stopped answering her phone and let all her calls go to voicemail.

37. Plaintiff's son answered the phone so his mother wouldn't be stressed, as he worried the calls would make her heart condition worse. Anderson told plaintiff's son that his mother was a "deadbeat".

38. Upon information and belief, since April 2010, Anderson has reported to both Equifax and Experian information they knew was inaccurate and erroneous as it was a non-existent account.

39. As a furnisher of information, Anderson was under a duty to respond to and is not allowed pursuant to *15 U.S.C. § 1681 to* furnish to a consumer reporting agency, information about a consumer if it knows, should know, or consciously avoids knowing, that the information it reports is inaccurate.

40. Upon information and belief, Anderson failed to cease collection activity by selling, assigning or passing on the "Account" to Diversified prior to validating the "Account" and thus violated the FCRA and MGL c. 93.

41. Shortly after plaintiff had disputed the "Account" again with Experian, she received a dunning letter dated January 16, 2012 from Diversified attempting to collect on the same non-existent "Account" as Anderson.

42. Anderson failed to cease collection activity by selling, assigning or passing on the "Account" to Diversified prior to validating the "Account" and thus violated the FCRA and MGL c. 93.

43. Plaintiff sent Diversified a request for validation of the "Account" by USPS certified mail/return receipt on February 18, 2012.

44. Diversified failed and refused to provide any documentation whatsoever supporting its contention that the plaintiff was legally obligated to pay the "Account".

45. Plaintiff denies ever having any established business relationship, contractual agreement for credit, loans, or services with Diversified, or the alleged creditor Sprint.

46. The Plaintiff received over ten (10) calls from Diversified using an automatic telephone dialing system (ATDS) and prerecorded messages from January 12, 2010 thru February 23, 2012, in violation of the TCPA and 209 CMR 18.14(1).

## II. FACTS PERTAINING TO ANDERSON AND EQUIFAX

47. On or about April 2010, Anderson reported the "Account" to Equifax.

48. On April 6, 2010, the plaintiff disputed with Equifax the information furnished by Anderson and requested that it conduct an investigation.

49. One day later, on April 7, 2010, Equifax emailed the plaintiff and said it had completed its reinvestigation.

50. Until recently, the plaintiff had forgotten the dispute until she saw it on her Experian report dated October 24, 2011, which gave rise to plaintiff's complaint currently before this honorable court.

51. Plaintiff received the detailed results of their reinvestigation of her dispute, in the mail on or about April 15, 2010 when she arrived home from vacation, it read in part as follows;

        a. "Equifax contacted each source directly and our investigation is now completed."

b. "We researched the collection account. Account #xxxxxx0200".

c. "Equifax verified the collection account with the original source".

d. "Equifax has verified that this item has been reported correctly".

e. "Equifax verified that this item belongs to you".

f. "Additional information has been provided from the original source regarding this item".

g. "Status as of 4/2010 – Unpaid".

h. "AFNI: Collection Reported 04/2010".

i. "Collection Account".

j. "Consumer disputes This Account information" .

k. "Collection Agency Information (This section includes accounts that have been placed for collection with a collection agency)".

l. "Assigned 11/2006".

m. "Status as of 04/2010".

n. "Unpaid; Date of 1st Delinquency 09/2005".

o. "Balance as of 04/2010".

p. "Utilities; Client – Sprint: Amount - $310".

52. Plaintiff denies ever having any established business relationship, contractual agreement for credit, loans, or services with Anderson, or the alleged creditor Sprint.

53. Upon information and belief, between April 6, 2010 and April 7, 2010 Equifax submitted plaintiff's dispute to Anderson. Anderson failed to conduct a reasonable reinvestigation

of the plaintiff's dispute and it continued to report to Equifax that the plaintiff was legally
obligated to pay the "Account".

54. Plaintiff has never been provided with any written communication related to the
"Account" from any source prior to her dispute with Equifax in April 2010.

55. Plaintiff has never been provided with any written communication related to the
"Account" from any source after her dispute with Equifax in April 2010, with the
exception of her credit reports.

56. After plaintiff received the reinvestigation results, she was informed by Equifax that if
the reinvestigation does not resolve the dispute to her satisfaction, she could send a
statement to Equifax to keep in her file explaining why she thinks the record is
inaccurate. On or about April 7, 2010, Plaintiff sent the statement "I have no knowledge
of this account."

57. Plaintiff was also informed that Equifax must include her statement about the disputed
information in reports it issues about her.

58. Upon information and belief, after April 7, 2010, Equifax failed to include in plaintiff's
reports that "consumer disputes this account information" and the plaintiff's statement
"I have no knowledge of this account".

59. Plaintiff had not pursued further dispute of the "Account" due to the fact that her time
was spent with her mother and sister whom had been diagnosed with liver, lung and
colon cancer, to which they both eventually succumbed.

60. On or about October 23, 2011, the plaintiff requested a copy of her free annual credit
report from all three major credit reporting agencies.

61. Upon receipt of plaintiff's Equifax credit report dated October 23, 2011 she noticed that Anderson was not showing on her report as it was on her Experian report dated October 24, 2011.

62. Plaintiff thereafter, looked in her records and found that she had disputed the "Account" on April 6, 2010 with Anderson and therefore it should have appeared on her report.

63. Plaintiff, after a web search, realized that Anderson was also known as AFNI, Inc. which will be shown on her later reports.

64. Plaintiff sent a letter to Equifax on November 15, 2011 disputing erroneous, inaccurate and impermissible information as shown on her October 23, 2011 credit report.

65. Plaintiff did not dispute the "Account" because it was not showing on her report.

66. Equifax responded to plaintiff's dispute on December 28, 2011 as if she had disputed the "Account".

67. Equifax reported the "Account" information as verified by Anderson by placing it on plaintiff's December 28, 2011 report.  It included statements that;

    a. "AFNI: Collection Reported 12/2011"

    b. "past due as of Dec 2011."

    c. "Consumer disputes This Account information".

    d. "(This section includes accounts that credit grantors have placed for collection with a collection agency)".

    e. "Assigned 11/2006".

    f. "Status as of 12/2011".

    g. "Unpaid; Date of 1st Delinquency 09/2005".

        h. "Balance as of 12/2011".

        i. "Account #  xxxxxx0200".

        j. "Collection Account".

        k. "Utilities; Client – Sprint: Amount - $310".

68.  The credit report dated December 28, 2011, clearly contradicted the fact that plaintiff had disputed the "Account" with it previously on April 6, 2010.

69. Upon information and belief Anderson attempted to re-age the "Account" by changing the alleged past due date.

70. The credit report dated December 28, 2011 <u>did not</u> include plaintiff's statement of April 2010, "I HAVE NO KNOWLEDGE OF THIS ACCOUNT."

71. Plaintiff requested her Equifax report again on January 6, 2012, upon review Equifax stated that "Great care has been taken to report this information correctly".  Equifax did not take great care as they continued to report on January 6, 2012 the same exact inaccurate, and erroneous nonexistent "Account" information as it had previously on plaintiff's December 28, 2011 report as follows;

        a. "AFNI: Collection Reported 12/2011" .

        b. "past due as of Dec 2011."

        c. "Consumer disputes This Account information".

        d. "(This section includes accounts that credit grantors have placed for collection with a collection agency)".

        e. "Assigned 11/2006".

        f. "Status as of 12/2011".

> g. "Unpaid; Date of 1st Delinquency 09/2005".
>
> h. "Balance as of 12/2011".
>
> i. "Account # xxxxxx0200".
>
> j. "Collection Account".
>
> k. "Utilities; Client – Sprint: Amount - $310".

72. The credit report dated January 6, 2012, clearly contradicted the fact that plaintiff had disputed the "Account" with it previously on April 6, 2010.

73. The credit report dated January 6, 2012, <u>did not</u> include plaintiff's statement of April 2010, "I HAVE NO KNOWLEDGE OF THIS ACCOUNT."

74. Equifax has not taken great care to report the information correctly.

75. Plaintiff requested her Equifax credit report again on February 28, 2012. Mysteriously, the "Account" that Equifax and Anderson had verified as accurate since April 2010 had been deleted and the plaintiff was not notified of this action in response to her dispute of November 15, 2011.

76. Anderson deletion of the "Account" was a tacit admission of their violation of the FCRA.

77. Equifax placed a fraud alert on plaintiff's credit file on or about December 11, 2011, plaintiff did not request this at any time from it or any credit reporting agency. Equifax said it would send the fraud alert to Experian and TransUnion, which it did. Plaintiff wrote to Equifax on December 27, 2011 and asked that it be removed and to inform Experian and TransUnion. As late as February 28, 2012, Equifax had not removed the fraud alert.

78. Anderson has failed since April 6, 2010 to conduct proper and reasonable investigations of the plaintiff's disputes.

79. Anderson, as a furnisher of information, pursuant to the FCRA and MGL c. 93 is not allowed to furnish to a consumer reporting agency, information about a consumer if it knows, should know, or consciously avoids knowing, that the information it reports is inaccurate.

80. Upon information and belief Equifax since April 6, 2010 has failed to assure maximum possible accuracy when preparing plaintiff's credit reports and therefore it has published and disseminated erroneous credit information to third parties.

81. The actions displayed by Anderson and Equifax have been extremely egregious as the information reported has not only been in regard to a non-existent account, but it's reporting of that "Account" has been inconsistent, unreliable and inaccurate.

82. As a result of its actions, the plaintiff has suffered, and will continue to suffer, damage.

### III. FACTS PERTAINING TO ANDERSON AND EXPERIAN

83. On or about October 24, 2011, the plaintiff requested a copy of her free annual credit report from all three major credit reporting agencies.

84. Upon review plaintiff noticed the entry by an entity named as AFNI, Inc. and after a web search realized that they were aka Anderson Financial. Plaintiff had forgotten that she had disputed the "Account" on April 6, 2010 until she saw it on her report, which is what gave rise to plaintiff's complaint currently before this honorable court.

85. The plaintiff did take notice that the address on her October 24, 2011 report was different than the one she had disputed on April 6, 2010.

86. Upon review plaintiff noticed the statement "I HAVE NO KNOWLEDGE OF THIS ACCOUNT."

87. Upon review the plaintiff noticed a statement by Experian which verifies she had disputed the "Account".  It read "This item was updated from our processing of your dispute in April 2010."

88. Upon information and belief, the above statement reported by Experian, verifies that it advised Anderson of the plaintiff's dispute in April 2010, that it had investigated her dispute and that it had verified the accuracy of the "Account".

89. The above statement by Experian shows that Anderson failed to conduct a reasonable reinvestigation of the plaintiff's dispute and it continued to report that the plaintiff was legally obligated to pay the "Account" from April 2010 thru the date of that report which was October 24, 2011.

90. Plaintiff has never been provided with any written communication related to the "Account" from any source prior to her dispute with Experian in April 2010.

91. Plaintiff has never been provided with any written communication related to the "Account" from any source after her dispute in April 2010 with the exception of her credit reports.

92. Plaintiff sent a letter to Experian on November 15, 2011 again disputing the "Account" as well as other erroneous, inaccurate and impermissible information on her October 24, 2011 credit report.  Experian received the letter on December 2, 2011.

93. Experian responded to plaintiff's dispute as shown on her credit report dated December 22, 2011 with what they referred to as a correction summary.

94. Upon information and belief Experian notified Anderson of the plaintiff's dispute.

95. Experian reported the information as verified by Anderson by updating it on plaintiff's December 22, 2011 report.

96. Anderson's response shows again, that it failed to conduct a reasonable reinvestigation of the plaintiff's dispute and it continued to report to Experian thru December 22, 2011 that the plaintiff was legally obligated to pay the "Account".

97. Anderson and Experian reported on the same report that the "Account" was "past due as of Dec 2011." This was a contradiction to what both Anderson and Experian had previously reported on plaintiff's October 24, 2011 report as "past due as of April 2010."

98. Upon information and belief Anderson attempted to re-age the "Account" by changing the alleged past due date.

99. Anderson and Experian reported additional inaccurate and erroneous information on the same report, when they reported that the plaintiff's statement "I HAVE NO KNOWLEDGE OF THIS ACCOUNT" was made in "Dec 2011." This was a contradiction to what both Anderson and Experian had previously reported on plaintiff's October 24, 2011 report as "past due as of April 2010."

100. Experian completed plaintiff's dispute and mailed her additional dispute results dated January 16, 2012. Experian noted the "Account" as updated. Upon review, Anderson and Experian had not made any changes. Anderson and Experian continued to report the same inaccurate and erroneous information as they had previously on December 22, 2011.

101. Plaintiff obtained her March 7, 2012 credit report. Mysteriously, the "Account" that Experian had verified as accurate since April 2010 had been deleted and the plaintiff had not been notified of this action by Experian in response to her dispute. It is to be noted that plaintiff's credit report dated October 24, 2011 stated the "Account" was to have remained in plaintiff's credit file until June 2012.

102. Anderson deleting the "Account" was a tacit admission of their violation of the FCRA.

103. Experian reported on December 22, 2011 that plaintiff requested it to place a personal statement regarding an ID Security Alert in her file on December 9, 2011. The statement was to be included in her credit reports sent to companies requesting it. Plaintiff did not request it or any credit reporting agency to place a fraud alert or any statement in her credit file. Experian has continued to report the fraud alert in spite of the fact that plaintiff wrote to it on December 15, 2011 and on February 18, 2012 and asked them to remove it. It was finally removed on March 7, 2012.

104. Anderson has failed since April 6, 2010 to conduct proper and reasonable investigations of the plaintiff's disputes.

105. Anderson, as a furnisher of information, is not allowed pursuant to the Fair Credit Reporting Act to furnish to a consumer reporting agency, information about a consumer if it knows, should know, or consciously avoids knowing, that the information it reports is inaccurate.

106. Upon information and belief Experian since April 2010 has failed to assure maximum possible accuracy when preparing plaintiff's credit reports and therefore it has published and disseminated erroneous credit information to third parties. Obviously,

its actions have been egregious as the information reported has not only been in regard to a non-existent account, but inconsistent and inaccurate reporting of that non-existent account.

107. As a result of its actions, the plaintiff has suffered, and will continue to suffer, damage.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ANDERSON IN ITS CAPACITY AS A FURNISHER OF INFORMATION TO THE CREDIT REPORTING AGENCY DEFENDANTS

108. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and re-alleged herein.

109. After being informed by the credit reporting agencies that the plaintiff disputed the accuracy of the information it was providing, Anderson negligently failed to conduct a proper reinvestigation of the plaintiff's dispute pertaining to the "Account" filed with the two national consumer reporting agencies, as required by 15 U.S.C. § 1681s-2(b)(A).

110. Anderson negligently failed to review all relevant information purportedly provided by such credit reporting agencies to Anderson in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

111. Anderson negligently failed to direct such consumer reporting agencies to delete inaccurate information about the plaintiff pertaining to the "Account", as required by 15 U.S.C. § 1681s-2(b)(C). Anderson's untimely decision to finally delete the "Account" as noted in paragraph 75 and 101 above, after almost two years was a tacit admission of violating the FCRA.

112. The plaintiff has a private right of action to assert claims against Anderson arising under 15 U.S.C. § 1681s-2(b).

113. Anderson is liable to the plaintiff for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, together with her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o. Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ANDERSON IN ITS CAPACITY AS A FURNISHER OF INFORMATION TO THE CREDIT REPORTING AGENCY DEFENDANTS

114. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and re-alleged herein.

115. After being informed by the credit reporting agencies that the plaintiff disputed the accuracy of the information it was providing, Anderson willfully failed to conduct a proper investigation of the plaintiff's dispute, filed with the two national consumer reporting agencies, that she was not liable for the "Account" appearing on her credit reports, as required by 15 U.S.C. § 1681s-2(b)(A).

116. Anderson willfully failed to review all relevant information purportedly provided by such credit reporting agencies to Anderson in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

117. Anderson willfully failed to direct such consumer reporting agencies to delete inaccurate information about the plaintiff pertaining to the "Account" as required by 15 U.S.C. § 1681s-2(b)(C). Anderson's untimely decision to finally delete the "Account" as noted in paragraph 75 and 101 above, after almost two years was a tacit admission of violating the FCRA.

118. The plaintiff has a private right of action to assert claims against Anderson arising under 15 U.S.C. § 1681s-2(b). Anderson is liable to the plaintiff for the actual damages she has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n. Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST ANDERSON IN ITS CAPACITY AS A FURNISHER OF INFORMATION TO THE CREDIT REPORTING AGENCY DEFENDANTS

119. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

120. Anderson maliciously defamed the plaintiff by its knowing publication to third-parties of erroneous information that the plaintiff was an individual obligor on a non-existent "Account".

121. Anderson had actual knowledge of the false and fraudulent nature of such information and published it despite having such knowledge.

122. Anderson's actual knowledge of the falsity and reckless disregard for the truth demonstrates its malice and/or willful intent to injure the plaintiff.

123. As a direct and proximate result of such conduct, the plaintiff suffered actual damages as set forth herein.

124. Anderson is liable to the plaintiff for the actual damages she has sustained by reason of such conduct.

125. The plaintiff is entitled to an award of punitive damages from Anderson in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ANDERSON IN ITS CAPACITY AS A FURNISHER OF INFORMATION TO THE CREDIT REPORTING AGENCY DEFENDANTS

126. The plaintiff repeats and realleges each and every allegation set forth above as if re-asserted and re-alleged here.

127. Plaintiff was not an applicant or joint obligor to any "Account" with Anderson or with the alleged creditor Sprint.

128. Anderson continued to demand that the plaintiff pay the disputed charges on the "Account" by reporting a past due amount of $310.00 as currently owing to the two national credit reporting agencies.

129. The plaintiff is entitled to a declaration by the Court, pursuant to 28 USC § 2201 that she is not liable to Anderson for any of the charges on the "Account" and that she was never an obligor on the "Account".

130. Andersons continued reporting of the "Account" to the two national credit bureaus has caused the plaintiff to suffer harm. Such harm will continue unless and until Anderson is enjoined from continuing to report to third-parties that she is liable for payment on the "Account".

131. The plaintiff is entitled to an injunction directing Anderson to correct its records so as to delete any reference to the plaintiff to the "Account" and further to refrain from advising any third parties that the plaintiff is liable for payment on the "Account".

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST EXPERIAN

132. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

133. Experian prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the plaintiff, as that term is defined in 15 U.S.C. § 1681a(d).

134. Such reports contained information about the "Account" that was false, misleading and inaccurate.

135. Experian negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the plaintiff, in violation of 15 U.S.C. § 1681e(b) and MGL c. 93 § 54(b).

136. As a direct and proximate result of such conduct, the plaintiff suffered actual damage as set forth herein.

137. Experian is liable to the plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o and MGL c. 93 § 64. Violating M.G.L. c. 93, § 50-68 is a violation of 93A. Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST EXPERIAN**

138. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and re-alleged herein.

139. Experian prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the plaintiff, as that term is defined in 15 U.S.C. § 1681a(d).

140. Such reports contained information about the "Account" that was false, misleading and inaccurate.

141. Experian willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the plaintiff or in credit reports supplied to third parties, in violation of 15 U.S.C. § 1681e(b) and MGL c. 93 § 54(b).

142. As a direct and proximate result of such conduct, the plaintiff suffered actual damages as set forth herein.

143. Experian is liable to the plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n and MGL c. 93 § 63. Violating M.G.L. c. 93, § 50-68 is a violation of 93A. Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST EXPERIAN**

144. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

145. Experian negligently failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the plaintiff's consumer reports as contained in its files pertaining to the plaintiff or in credit reports supplied to third parties in violation of 15 U.S.C. § 1681i and MGL c. 93 § 58.

146. As a direct and proximate result of such conduct, the plaintiff suffered actual damages as set forth herein.

147. Experian is liable to the plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o and MGL c. 93 § 64. Violating M.G.L. c. 93, § 50-68 is a violation of 93A. Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST EXPERIAN

148. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

149. Experian willfully failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the plaintiff's consumer reports as contained in its files pertaining to the plaintiff or in credit reports supplied to third parties in violation of 15 U.S.C. § 1681i and MGL c. 93 § 58.

150. As a direct and proximate result of such conduct, the plaintiff suffered actual damages as set forth herein.

151. Experian is liable to the plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees she may recover therefore pursuant to 15 U.S.C. § 1681n and MGL c. 93 § 63. Violating M.G.L. c. 93, § 50-68 is a violation of 93A. Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST EXPERIAN

152. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

153. Experian maliciously defamed the plaintiff by its knowing publication to third-parties reports containing the "Account", and the fact that it was in a collection status, and which falsely described it as an obligation of the plaintiff.

154. Experian knew or should have known of the false, inaccurate and misleading nature of such information and published it despite having such knowledge.

155. Experian knew or should have known of the falsity and its reckless disregard for the truth demonstrates its malice and/or willful intent to injure the plaintiff.

156. As a direct and proximate result of such conduct, the plaintiff suffered actual damages as set forth herein.

157. Experian is liable to the plaintiff for the actual damages she has sustained by reason of such conduct.

158. The plaintiff is entitled to an award of punitive damages from Experian in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST EQUIFAX

159. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

160. Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the plaintiff, as that term is defined in 15 U.S.C. § 1681a(d).

161. Such reports contained information about the "Account" that was false, misleading and inaccurate.

162. Equifax negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the plaintiff, in violation of 15 U.S.C. § 1681e(b) and MGL c. 93 § 54(b).

163. As a direct and proximate result of such conduct, the plaintiff suffered actual damage as set forth herein.

164. Equifax is liable to the plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o and MGL c. 93 § 64. Violating M.G.L. c. 93, § 50-68 is a violation of 93A. Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST EQUIFAX

165. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

166. Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the plaintiff, as that term is defined in 15 U.S.C. § 1681a(d).

167. Such reports contained information about the "Account" that was false, misleading and inaccurate.

168. Equifax willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the plaintiff or in credit reports supplied to third parties, in violation of 15 U.S.C. § 1681e(b) and MGL c. 93 § 54(b).

169. As a direct and proximate result of such conduct, the plaintiff suffered actual damages as set forth herein.

170. Equifax is liable to the plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n and MGL c. 93 § 63. Violating M.G.L. c. 93, § 50-68 is a violation of 93A. Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST EQUIFAX

171. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

172. Equifax negligently failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the plaintiff's consumer reports as contained in its files pertaining to the plaintiff or in credit reports supplied to third parties in violation of 15 U.S.C. § 1681i and MGL c. 93 § 58.

173. As a direct and proximate result of such conduct, the plaintiff suffered actual damages as set forth herein.

174. Equifax is liable to the plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o and MGL c. 93 § 64. Violating M.G.L. c. 93, § 50-68 is a violation of 93A. Defendants violated Chapter 93A by virtue of violating the FCRA  pursuant to 940 C.M.R. §3.16.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST EQUIFAX

175. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

176. Equifax willfully failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the plaintiff's consumer reports as contained in its files pertaining to the plaintiff or in credit reports supplied to third parties in violation of 15 U.S.C. § 1681i and MGL c. 93 § 58.

177. As a direct and proximate result of such conduct, the plaintiff suffered actual damages as set forth herein.

178. Equifax is liable to the plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees she may recover therefore pursuant to 15 U.S.C. § 1681n and MGL c. 93 § 63. Violating M.G.L. c. 93, § 50-68 is a violation of 93A. Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST EQUIFAX

179. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

180. Equifax maliciously defamed the plaintiff by its knowing publication to third-parties reports containing the "Account", and the fact that it was in a collection status, and which falsely described it as an obligation of the plaintiff.

181. Equifax knew or should have known the false, inaccurate and misleading nature of such information and published it despite having such knowledge.

182. Equifax knew or should have known of the falsity and its reckless disregard for the truth demonstrates its malice and/or willful intent to injure the plaintiff.

183. As a direct and proximate result of such conduct, the plaintiff suffered actual damages as set forth herein.

184. Equifax is liable to the plaintiff for the actual damages she has sustained by reason of such conduct.

185. The plaintiff is entitled to an award of punitive damages from Equifax in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to other to prevent the occurrence of such egregious conduct in the future.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ANDERSON  AND DIVERSIFIED IN THEIR CAPACITY AS  DEBT COLLECTORS

186. The plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

187. Anderson failed to communicate to the plaintiff her right to dispute the validity of the "Account" within five days of its initial (telephone) communication, pursuant to 15 U.S.C. § 1692g and 209 CMR 18.18(1) and therefore pursuant to 1692g(b) and 209 CMR 18.18(2) were to cease all collection activity until they mailed plaintiff verification of the "account."

188. Diversified and Anderson did not have the express consent of the plaintiff to communicate with her in connection with the collection of the "Account" and thereby violated 209 CMR 18.14(1)(d).

189. Anderson violated the  209 CMR 18.14(2) when they spoke to plaintiff's son on the telephone, as they did not have the express consent of the plaintiff to communicate with her or any third party in connection with the collection of the "Account".

190. Anderson's conduct violated 209 CMR 18.15(4) when it told plaintiff's son on the telephone, that his mother was a deadbeat, as this conduct the natural consequence of which was to harass, oppress, or abuse the plaintiff.

191. Anderson and Diversified violated the 15 U.S.C. § 1692e(2) and 209 CMR 18.16(2) by using false representation of the character, amount, and legal status of the debt as the "Account" was non-existent.

192. Anderson and Diversified used unfair practices thus violating 1692f(1) and 209 CMR 18.17(1) by attempting collection of an amount that was not expressly authorized by any agreement.

193. Anderson violated 209 CMR 18.17(11) by reporting to Experian and Equifax in its name the alleged experiences with the plaintiff.

194. Anderson violated 209 CMR 18.15(4) when the plaintiff had to constantly stop what she was doing and screen her telephone calls, as this conduct the natural consequence of which was to harass, oppress, or abuse the plaintiff.

195. Anderson violated 15 U.S.C. § 1692e(2) and 209 CMR 18.16(8) when it communicated false credit information about the "Account" to Experian, Equifax and Diversified which in turn, was a deceptive means to attempt to collect the "Account" and as such violated 15 U.S.C. § 1692e and 209 CMR 18.16(10).

196. Since April 2010, Anderson has attempted to collect the "Account", by reporting to Experian and Equifax without first having mailed plaintiff verification of the "Account" as required by 209 CMR 18.18(2) and thus have failed to cease collection efforts in violation of 15 U.S.C. § 1692g(b).

197. On or about January 16, 2012, plaintiff received a letter from Diversified attempting to collect the same "Account". Upon information and belief, Anderson attempted to collect when it sold, assigned or passed on the "Account" to Diversified prior to mailing plaintiff verification of the "Account" in violation of 209 CMR 18.18(2) and thus violated 15 U.S.C. § 1692g(b).

198. Anderson and Diversified are liable to the plaintiff for the damage she has suffered as a result of such illegal conduct as well as for statutory damages and the plaintiff may

recover same pursuant to 15 USC § 1692k(a)(1), 1692k(a)(2)(A) and 1692k(b)(1). In addition, the plaintiff may recover costs and attorney's fees pursuant to 15 USC § 1692k (a)(3). Violating M.G.L. c. 93, § 24-48 (209 CMR 18 et seq) is a violation of 93A. Defendants violated Chapter 93A by virtue of violating the FDCPA pursuant to 940 C.M.R. §3.16.

199. Plaintiff received over ten (10) calls from Diversified who used an automatic telephone dialing system (ATDS) and left prerecorded messages on her cell phone from January 12, 2010 thru February 23, 2012, in violation of 47 U.S.C. §227(b)(1)(A).

200. Plaintiff and Diversified do not have an established business relationship within the meaning of 47 U.S.C. §227 and plaintiff has never given Diversified permission to call her at any time.

201. Plaintiff is entitled to damages of $500 per violation. Diversified has violated 47 U.S.C. §227(b)(3)(B) (3) times per call and is entitled to $1500.00 per call. Defendants further violated Chapter 93A by virtue of violating the TCPA pursuant to 940 C.M.R. §3.16.

**WHEREFORE**, the plaintiff respectfully requests the following relief;

An order directing that Experian and Equifax immediately delete all of the inaccurate information from plaintiff's credit reports and files, and that Anderson cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information and;

An order directing that Equifax and Experian send to all persons and entities to whom they have reported plaintiff's inaccurate information within the last two years plaintiff's updated and corrected credit report information and that;

Judgment be entered against each and every defendant for monetary statutory and/or actual damages, punitive damages, treble, multiple damages, pre and post judgment interest, costs, attorney's fees and such additional relief as the Court deems just and reasonable.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: April 5, 2012

Respectfully submitted,

*Dawn M. Jenkins*, pro se

Dawn May Jenkins
c/o 33 Eastern Avenue, Unit 2
Lynn, Massachusetts 01902
978-332-3798