FILED
IN CLERK'S OFFICE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS 2012 JUN 18 ⊃ 2: 25

U. S. DISTRICT COURT
.

| | |
|---|---|
| Dawn M. Jenkins ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action |
| ) | |
| AFNI, INC.; DIVERSIFIED CONSULTANTS, INC.; ) | WGY |
| ) | No. 12-10622-RBC |
| EQUIFAX INFORMATION SERVICES, LLC and ) | |
| ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC, ) | |
| ) | |
| Defendants ) | |

## **FIRST AMENDED COMPLAINT AND TRIAL BY JURY DEMANDED**

### **JURISDICTION AND VENUE**

1.  The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p). This Court has

    supplemental jurisdiction of the state law claims asserted herein under 28 U.S.C. §

    1367(a) and pendant jurisdiction over the state common law claims asserted herein.

    Venue is properly laid pursuant to 28 U.S.C. § 1391(b).

### **PARTIES**

2.  The Plaintiff is an adult resident of the state of Massachusetts, city of Lynn, county of Essex.

3.  The Plaintiff is a "consumer" within the meaning of the FCRA [15 U.S.C. § 1681a(c)] as well as within the meaning of the FDCPA [15 USC § 1692a(3).

4.  AFNI, INC hereafter ("Anderson"), is an Illinois and Arizona corporation duly authorized and qualified to do business in the State of Massachusetts.

5.  Anderson is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

6.  Anderson is a "debt collector" within the meaning of the FDCPA [15 USC § 1692a(6)].

7.  Diversified CONSULTANTS d/b/a FLORIDA DIVERSIFED CONSULTANTS, INC. hereafter ("Diversified") is a Florida corporation, duly authorized and qualified to do business in the State of Massachusetts.

8.  Diversified is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

9.  Diversified is a "debt collector" within the meaning of the FDCPA [15 USC § 1692a(6)].

10. EXPERIAN INFORMATION SOLUTIONS, INC., hereafter ("Experian") is an Ohio corporation, duly authorized and qualified to do business in the State of Massachusetts.

11. Experian is a "consumer reporting agency" within the meaning of the FCRA [15 U.S.C. § 1681a(f)].

12. EQUIFAX INFORMATION SERVICES, LLC hereafter ("Equifax") is a Georgia corporation, duly authorized and qualified to do business in the State of Massachusetts.

13.   Equifax is a "consumer reporting agency" within the meaning of the FCRA [15 U.S.C.
      § 1681a(f)].

## PRELIMINARY STATEMENT

14.   This action is for actual, statutory and punitive damages, costs and statutory attorney's
      fees and arises out of Defendants' repeated violations of the Fair Debt Collection
      Practices Act, ("FDCPA") 15 U.S.C. §1692 *et seq*.; the Fair Credit Reporting Act,
      ("FCRA"), 15 U.S.C. § 1681 *et seq*.; the Massachusetts Fair Credit Reporting Act
      ("M.G.L. c 93§ 50-68"); the Telephone Consumer Protection Act ("TCPA"), 47 USC §
      227 et seq.; the Regulation of Business Practice and Massachusetts Protection Act
      ("M.G.L. c. 93A § 1-11"); the Code of Massachusetts Regulations ("C.M.R."), 209
      C.M.R. 18.00 *et seq.* aka M.G.L. 93 § 24-48  and out of the invasions of  Plaintiff's
      personal privacy by the Defendants and their agents in their illegal efforts to collect a
      non-existent consumer debt alleged to be owed by the Plaintiff to Sprint hereafter
      "Account" as set forth below.

15.   In addition, the Plaintiff seeks actual and punitive damages on her common law pendant
      state claims for defamation and invasion of privacy.

16.   Anderson a debt collection agency violated the FCRA by failing to conduct a proper
      investigation of the Plaintiff's disputes she had filed with the credit reporting agency
      defendants.  Those disputes claimed that the Plaintiff was not liable for the Sprint
      "collection account" appearing on her credit reports as it was a non-existent debt.
      Anderson knew or should have known that the "Account" was non-existent and failed to

direct such consumer reporting agencies to delete inaccurate information about the Plaintiff from the files maintained by them.

17. In addition, Anderson willfully and maliciously defamed the Plaintiff by repeatedly reporting information about her to various third parties since January 2010, which it knew, or reasonably should have known, was false. As a result of such actions and conduct, the Plaintiff suffered damage, which she is permitted to recover for in this action and she is also entitled to an award of punitive damages.

18. Upon information and belief Anderson sold, assigned or passed the "Account", to Diversified prior to mailing Plaintiff verification of the "Account" in violation MGL and FDCPA.

19. The debt collection agency defendant Diversified violated the FCRA by obtaining Plaintiff's consumer credit report without a permissible purpose.

20. The debt collection agency defendants Anderson and Diversified violated the FDCPA and MGL by failing to cease collection actions prior to validation of the alleged "Account" in response to a request for same.

21. The debt collection agency defendants Anderson and Diversified have attempted to collect an "Account" the natural consequence of which was to harass, oppress, or abuse the Plaintiff and used false, deceptive and misleading representation in their attempts to collect the "Account".

22. The credit reporting agency defendants Experian and Equifax violated the FCRA and MGL by failing to follow reasonable procedures to assure maximum possible accuracy when preparing credit reports purportedly concerning the Plaintiff.

23. The credit reporting agency defendants also violated the FCRA and MGL by repeatedly
    issuing credit reports to various third-parties, purportedly pertaining to the Plaintiff,
    which contained an erroneous entry which did not legitimately belong to the Plaintiff,
    despite having received actual notice, on repeated occasions, that such entry was not
    hers or was otherwise inaccurate.

24. The credit reporting agency defendants repeatedly violated their obligation under the
    FCRA and MGL to properly investigate disputed items in the Plaintiff's credit file
    maintained by them.

25. The credit reporting agency defendants defamed the Plaintiff and violated her privacy
    by repeatedly publishing to third-parties information purportedly about her which was
    false and which caused her to suffer injury.

26. The credit reporting agency defendants provided the Plaintiff's credit report, containing
    a non-existent collection account, to third-parties, who then used such reports to make
    creditworthiness determinations about her and, as a result, her credit score was adversely
    affected and her current credit standing with her legitimate creditors was adversely
    affected.

27. The credit reporting agencies willfully violated various provisions of the FCRA, and
    MGL as set forth herein.

28. The credit reporting agency defendants also willfully and maliciously defamed the
    Plaintiff by repeatedly reporting information about her to various third parties which
    they knew, or reasonably should have known, was false.

29. As a result of such actions and conduct the Plaintiff suffered damage which she is permitted to recover for in this action and she is also entitled to an award of punitive damages.

30. The Plaintiff further alleges that as a direct and proximate result of the each of the defendants' actions, conduct and omissions she suffered actual damage including, but not limited to, damage to her existing credit accounts, loss of ability to purchase and benefit from credit, emotional distress, annoyance, aggravation, frustration.

## FACTUAL BACKGROUND

## I. FACTS PERTAINING TO ANDERSON AND DIVERSIFIED IN THEIR CAPACITY AS DEBT COLLECTORS

31. Anderson is a debt collector and a furnisher of information to the three national credit reporting agencies, such as Experian, Equifax and TransUnion. The information which it furnishes affects the credit history, experience, and credit rating of this Plaintiff.

32. TransUnion is not a defendant in this matter.

33. On or about April 6, 2010 Plaintiff discovered that Anderson furnished Experian and Equifax information about a **non-existent Sprint collection account** hereinafter ("Account") which they allege was owed by the Plaintiff and assigned to it for collection by Sprint in November 2006. **Plaintiff is in possession of dated letters from the alleged original creditor Sprint showing that she had no such "Account" as alleged by Anderson and Diversified.**

34. Anderson called Plaintiff on numerous occasions beginning on or about April 2010 demanding payment on the "Account". Plaintiff told Anderson that she had no such account.

35. Plaintiff on or about April 2010 requested that Anderson provide documentation verifying the validity of the "Account" because she didn't do business on the telephone and she demanded that it cease further communications with her until then.

36. Plaintiff denies ever having any established business relationship, contractual agreement for credit, loans, or services with Anderson, or with the alleged creditor Sprint.

37. Anderson failed and refused to provide any documentation whatsoever supporting its contention that the Plaintiff was legally obligated to pay the "Account".

38. On or about April 2010, Plaintiff's son answered her phone so his mother wouldn't be stressed; as he worried the calls would make her heart condition worse. Anderson told Plaintiff's son on one occasion that his mother was a "deadbeat".

39. Plaintiff's ex fiancé asked Plaintiff to let him speak to Anderson the next time they called. On or about April 2010 Plaintiff heard her ex fiancé explain to Anderson that Plaintiff had excellent credit, that she pays her bills and to stop calling her because she never had a Sprint account. Anderson then blew a whistle in his ear, which Plaintiff heard across the room. The whistle startled Plaintiff's ex fiancé which then made them both angry as they feared his hearing aids may have been damaged or that he would experience additional hearing loss.

40. Plaintiff's ex fiancé when answering calls thereafter would pick up the phone and hang up immediately so that it wouldn't happen again. This unnerved the Plaintiff regardless because she couldn't relax in her own home.

41. Plaintiff's son was angry every time the phone rang as his mother had open heart surgery in the past and a pace maker inserted in January 2010 and he feared due to his mother's history of depression and anxiety that the calls would lead to exacerbation of those health issues and in turn her concentration and attention functions.

42. Plaintiff felt anxious when the phone would ring for she feared that her son's life could have been negatively impacted due to the stress he was seeing his mother experience.

43. Each time the phone would ring, everyone had to constantly stop what they were doing and screen the calls to see if it was Anderson.

44. Eventually the Plaintiff came up with the idea to blow the whistle into the phone when the call was from Anderson, followed by her saying "now you have a marvelous day" and then hanging up. The calls eventually stopped.

45. Since January 2010, Anderson has reported to both Equifax and Experian information that was inaccurate and erroneous.

46. As a furnisher of information, Anderson was under a duty to respond to and is not allowed pursuant to 15 U.S.C. § 1681 and MGL c. 93 to furnish to a consumer reporting agency, information about a consumer if it knows, should know, or consciously avoids knowing, that the information it reports is inaccurate.

47. Shortly after the Plaintiff disputed the "Account" for a second time with Experian, in November 2011, Diversified fraudulently obtained her consumer credit report on

January 10, 2012 from the national credit reporting agency TransUnion attempting to collect the same "Account" without a permissible purpose, in violation of 15 U.S.C. § 1681, 15 U.S.C. § 1692 and MGL c. 93.

48. Shortly after the Plaintiff disputed the "Account" for a second time with Experian in November 2011, she received a dunning letter dated January 16, 2012 from Diversified attempting to collect the "Account" at the same time Anderson was reporting it to Experian and Equifax as its "collection account".

49. Anderson by selling, assigning or passing on the "Account" to Diversified was an attempt to collect the "Account", in which they had failed and refused to provide Plaintiff written notification of her rights to request verification of the "Account".

50. Plaintiff sent Diversified a request for validation of the "Account" by USPS certified mail/return receipt on February 18, 2012.

51. Diversified failed to respond to Plaintiff's request for validation and continued collection efforts by calling her without providing her validation of the "Account.

52. Plaintiff denies ever having any established business relationship, contractual agreement for credit, loans, or services with Anderson, Diversified, or the alleged creditor Sprint.

53. The Plaintiff received over ten (10) calls from Diversified using an automatic telephone dialing system (ATDS) and prerecorded messages from January 12, 2012 thru February 23, 2012. Each and every call failed to state at the beginning of its prerecorded voice message the requirements pursuant to the TCPA and each and every call failed to release Plaintiff's telephone line within 5 seconds after the prerecorded message.

54. Plaintiff contacted Diversified and Anderson in an attempt to settle this matter prior to filing this amended complaint and received no response.

55. **Plaintiff is in possession of dated letters from the alleged original creditor Sprint showing that she had no such "Account" as alleged by Anderson and Diversified.**

## II.  FACTS PERTAINING TO ANDERSON AND EQUIFAX

56. On or about January 2010 Anderson had reported the "Account" to Equifax.

57. On April 6, 2010, the Plaintiff disputed with Equifax the information furnished by Anderson and requested that it conduct an investigation.

58. One day later, on April 7, 2010, Equifax emailed the Plaintiff and said it had completed its reinvestigation.

59. The Plaintiff discovered that Anderson and Equifax had violated the FCRA and the M.G.L. after reviewing her Experian consumer credit report dated October 24, 2011

60. Plaintiff received the April 6, 2010 detailed results of Equifax's reinvestigation of her dispute in the mail on or about April 15, 2010, which read in part as follows;

    a. "Equifax contacted each source directly and our investigation is now completed."

    b. "We researched the collection account.  Account #xxxxxx0200".

    c. "Equifax verified the collection account with the original source".

    d. "Equifax has verified that this item has been reported correctly".

    e. "Equifax verified that this item belongs to you".

   f.  "Additional information has been provided from the original source regarding this item".

   g. "Status as of 4/2010 – Unpaid".

   h. "AFNI: Collection Reported 04/2010".

   i. "Collection Account".

   j. "Consumer disputes This Account information".

   k. "Collection Agency Information (This section includes accounts that have been placed for collection with a collection agency)".

   l. "Assigned 11/2006".

   m. "Status as of 04/2010".

   n. "Unpaid; Date of 1st Delinquency 09/2005".

   o. "Balance as of 04/2010".

   p. "Utilities; Client – Sprint: Amount - $310".

61. Plaintiff denies ever having any established business relationship, contractual agreement for credit, loans, or services with Anderson, or the alleged creditor Sprint.

62. Upon information and belief, between April 6, 2010 and April 7, 2010 Equifax submitted Plaintiff's dispute to Anderson. Anderson failed to conduct a reasonable reinvestigation of the Plaintiff's dispute and it continued to report to Equifax that the Plaintiff was legally obligated to pay the "Account".

63. Plaintiff has never been provided with any written communication related to the "Account" from any source prior to her dispute with Equifax in April 2010.

64. Plaintiff has never been provided with any written communication related to the "Account" from any source after her dispute with Equifax in April 2010, with the exception of her credit reports.

65. After Plaintiff received the reinvestigation results, she was informed by Equifax that if the reinvestigation does not resolve the dispute to her satisfaction, she could send a statement to Equifax to keep in her file explaining why she thinks the record is inaccurate. On or about April 2010, Plaintiff sent the statement "I have no knowledge of this account."

66. Plaintiff was also informed by Equifax that it must include her statement about the disputed information in reports it issues about her.

67. On or about October 23, 2011, the Plaintiff requested a copy of her free annual credit report from all three major credit reporting agencies.

68. Upon receipt of Plaintiff's Equifax credit report dated October 23, 2011 she noticed that her dispute with Anderson was not showing on her report as it was on her Experian report dated October 24, 2011.

69. Plaintiff had disputed the "Account" on April 6, 2010 with Equifax and therefore it should have appeared on her October 23, 2011 credit report.

70. Upon information and belief, from April 2010 thru Plaintiff's December 28, 2011 credit report , Equifax failed to include in Plaintiff's reports that "consumer disputes this account information" and Plaintiff's statement "I have no knowledge of this account".

71. Plaintiff sent a letter to Equifax on November 15, 2011 disputing erroneous, inaccurate and impermissible information as shown on her October 23, 2011 credit report.

72. Plaintiff did not dispute the "Account" with Anderson because it was not showing on her report dated October 23, 2011.

73. Equifax responded to Plaintiff's November 15, 2011 dispute regarding several erroneous, inaccurate and impermissible entries on her October 23, 2011 with a response dated December 28, 2011. Equifax responded as if one of the entries she had disputed pertained to the "Account" which in fact she had not disputed, as it had not appeared on her credit report.

74. Equifax reported the "Account" information as verified by Anderson by placing it on Plaintiff's December 28, 2011 report. It included statements that;

    a. "AFNI: Collection Reported 12/2011"

    b. "past due as of Dec 2011."

    c. "Consumer disputes This Account information".

    d. "(This section includes accounts that credit grantors have placed for

       collection with a collection agency)".

    e. "Assigned 11/2006".

    f. "Status as of 12/2011".

    g. "Unpaid; Date of 1st Delinquency 09/2005".

    h. "Balance as of 12/2011".

    i. "Account # xxxxxx0200".

    j. "Collection Account".

    k. "Utilities; Client – Sprint: Amount - $310".

75. The credit report dated December 28, 2011, is misleading and misrepresented the fact that Plaintiff has disputed the "Account" with it since April 6, 2010 and not since December 2011. The information as reported fails to report accurately the actual date Plaintiff initially disputed the "Account" with Equifax.

76. Anderson and Equifax knowingly reported additional inaccurate and erroneous information as shown on the December 28, 2011 report by changing as well, other dates they had previously reported as verified in April 2010.

77. The credit report dated December 28, 2011 did not include Plaintiff's statement of April 2010, "I HAVE NO KNOWLEDGE OF THIS ACCOUNT."

78. Plaintiff requested her Equifax report again on January 6, 2012, upon review Equifax stated that "Great care has been taken to report this information correctly".

79. Equifax did not take great care as they continued to report on January 6, 2012 the same exact inaccurate, and erroneous "Account" information as it had previously on Plaintiff's December 28, 2011 report as follows;

   a. "AFNI: Collection Reported 12/2011".

   b. "past due as of Dec 2011."

   c. "Consumer disputes This Account information".

   d. "(This section includes accounts that credit grantors have placed for collection with a collection agency)".

   e. "Assigned 11/2006".

   f. "Status as of 12/2011".

   g. "Unpaid; Date of 1st Delinquency 09/2005".

   h. "Balance as of 12/2011".

   i. "Account # xxxxxx0200".

   j. "Collection Account".

   k. "Utilities; Client – Sprint: Amount - $310".

80. The credit report dated January 6, 2012, is misleading and misrepresented the fact that Plaintiff has disputed the "Account" with it since April 6, 2010 and not since December 2011. The information as reported fails to report accurately the actual date Plaintiff initially disputed the "Account" with Equifax.

81. Anderson and Equifax knowingly reported additional inaccurate and erroneous information as shown on the January 6, 2012 report by changing as well, other dates they had previously reported as verified in April 2010.

82. The credit report dated January 6, 2012, did not include Plaintiff's statement of April 2010, "I HAVE NO KNOWLEDGE OF THIS ACCOUNT."

83. Equifax has not taken great care to report the information correctly.

84. Plaintiff requested her Equifax credit report again on February 28, 2012. **Mysteriously, the "Account" that Equifax and Anderson had verified as accurate since April 2010 which they had reported since January 2010 (see ¶ 60) had been deleted even after Equifax and Anderson had verified it as accurate as late as January 6, 2012. (see ¶ 79)**

85. Equifax placed a fraud alert on Plaintiff's credit file on or about December 11, 2011 which Plaintiff did not request at any time from it or any credit reporting agency. Equifax said it would send the fraud alert to Experian and TransUnion. Plaintiff wrote to

Equifax on December 27, 2011 and asked that it be removed and to inform Experian and

TransUnion.  As late as February 28, 2012, Equifax had not removed the fraud alert.

86. Upon information and belief, Anderson and Equifax have failed since January 2010 to

conduct proper and reasonable investigations of the Plaintiff's disputes.

87. Anderson, as a furnisher of information, was under a duty to respond to and is not

allowed pursuant to pursuant to 15 U.S.C. § 1681 and MGL c. 93 to furnish to a

consumer reporting agency, information about a consumer if it knows, should know, or

consciously avoids knowing, that the information it reports is inaccurate.

88. Equifax since January 2010 has failed to assure maximum possible accuracy when

preparing Plaintiff's credit reports and therefore it has published and disseminated

erroneous credit information to third parties.

89. Equifax stated on January 6, 2012 that "Great care has been taken to report this

information correctly", their actions show otherwise.

90. **Plaintiff is in possession of dated letters from the alleged original creditor Sprint
showing that she had no such "Account" as allegedly reported by Equifax and
Anderson since January 2010.**

91. The actions displayed by Anderson and Equifax have been extremely egregious as the

information reported and **allegedly reinvestigated** has not only been in regard to a **non-
existent account**, but worse, it's reporting of that **non-existent account has been
inconsistent, unreliable and inaccurate**.

92. As a result of its actions, the Plaintiff has suffered, and will continue to suffer, damage.

## III.  FACTS PERTAINING TO ANDERSON AND EXPERIAN

93. On or about October 24, 2011, the Plaintiff requested a copy of her free annual credit report from all three major credit reporting agencies.

94. Upon review Plaintiff noticed the entry by an entity named as AFNI, Inc. and after a web search realized they were aka Anderson Financial.

95. The following statements (see ¶ 96 a-k) as reported by Experian verifies that Plaintiff had disputed the "Account" with Experian.

96. Upon review Plaintiff noticed the following details reported by Experian

   a. under the heading "Status" the following words "Collection Account. $310.00 past due as of January 2010. **This item was updated from our processing of your dispute in Apr 2010.**

   b. under the heading "Date Opened" the words "11/2006"

   c. under the heading "Status Details:" the words "This account is scheduled to continue on record until Jun 2012".

   d. under the heading "Your Statement" the words **"I HAVE NO KNOWLEDGE OF THIS ACCOUNT.  Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)."**

   e. under the heading "Account History:" the words "Collection as of Jan 2010".

   f. under the heading "Date of Status" the words "01/2010".

   g. under the heading "Type" the words "Collection".

   h. under the heading "Recent Balance" the words "$310.00 as of 01/2010"

   i. under the heading "Credit Limit/Original Amount" the words "$310.00"

      j. under the heading "Terms" the words "1 Months"

      k. under the heading "Original Creditor" the words "SPRINT".

97. Upon information and belief, the above statements (see ¶ 96 a-k) as reported by
    Experian, verifies that it advised Anderson of the Plaintiff's dispute in April 2010, that it
    had reinvestigated her dispute and that it had verified the accuracy of the "Account"
    with Anderson.

98. The above statements (see ¶ 96 a-k) as reported by Experian, shows that Anderson failed
    to conduct a reasonable reinvestigation of the Plaintiff's dispute and it continued to
    report that the Plaintiff was legally obligated to pay the "Account" from January 2010
    thru the date of that report which was October 24, 2011.

99. Plaintiff has never been provided with any written communication related to the
    "Account" from any source prior to her dispute with Experian in April 2010.

100. Plaintiff has never been provided with any written communication related to the
    "Account" from any source after her dispute in April 2010 with the exception of her
    credit reports.

101. Plaintiff denies ever having any established business relationship, contractual agreement
    for credit, loans, or services with Anderson, or the alleged creditor Sprint.

102. Plaintiff sent a letter to Experian dated November 15, 2011 again disputing the
    "Account" as well as other erroneous, inaccurate and impermissible information on her
    October 24, 2011 credit report. Experian received the letter on December 2, 2011.

103. Experian responded to Plaintiff's second dispute of the "Account" as shown on what it
    referred to as a correction summary dated December 22, 2011.

104. Experian by updating the "Account" on the December 22, 2011 correction summary verifies that it had advised Anderson of the Plaintiff's second dispute on or about December 2011, that it had reinvestigated her dispute and that it had verified the accuracy of the "Account" with Anderson.

105. Anderson's response shows again, that it failed to conduct a reasonable reinvestigation of the Plaintiff's dispute and it continued to report to Experian that the Plaintiff was legally obligated to pay the "Account"

106. Anderson and Experian continued to report on the December 22, 2011 correction summary the same inaccurate and erroneous information as noted in the October 24, 2011 credit report as noted above (see ¶ 96 a-k).

107. Anderson and Experian reported additional inaccurate and erroneous information on the same correction summary, when they reported that the Plaintiff's statement "This item was updated from our processing of your dispute in Dec 2011" as;

a. it failed to report the factual date of April 2010 in which the Plaintiff had initially disputed the "Account".

b. it contradicted what both Anderson and Experian had previously reported on Plaintiff's October 24, 2011 credit report as "past due as of April 2010".

108. Experian had not completed its investigation of Plaintiff's dispute dated November 15, 2011 and therefore mailed her an additional and completed correction summary dated January 16, 2012. Experian noted the "Account" as updated. Upon review by the Plaintiff, Anderson and Experian had not made any changes. Anderson and Experian continued to report the same inaccurate and erroneous information as they had

previously on the December 22, 2011 report. The information as reported again fails to report the actual date of April 2010 in which Plaintiff initially disputed the "Account" with Experian.

109. Plaintiff requested and obtained her Experian credit report dated March 7, 2012.
**Mysteriously, the "Account" that Experian and Anderson had verified as accurate since April 2010 and as having been reported since January 2010, had been deleted and was not reflected on the March 7, 2012 report. (see ¶ 96 a-k)** Plaintiff had not been notified of this action by Experian in response to any of her disputes or otherwise. **It is to be noted that Plaintiff's credit report dated October 24, 2011 stated the "Account" was to have remained in Plaintiff's credit file until <u>June 2012</u>. (see ¶ 96 a-k)**

110. Experian reported on December 22, 2011 that Plaintiff requested it to place a personal statement regarding an ID Security Alert in her file on December 9, 2011. The statement was to be included in her credit reports sent to companies requesting it. Plaintiff <u>did not request it or any credit reporting agency</u> to place a fraud alert or any statement in her credit file. Experian has continued to report the fraud alert in spite of the fact that Plaintiff wrote to it on December 15, 2011 and on February 18, 2012 and asked them to remove it. It was finally removed on or about March 7, 2012.

111. Anderson has reported to Experian since January 2010 a non-existent account.

112. Anderson has failed since April 6, 2010 to conduct proper and reasonable investigations of the Plaintiff's disputes.

113 Anderson, as a furnisher of information, was under a duty to respond to and is not
allowed pursuant to pursuant to 15 U.S.C. § 1681 and MGL c. 93 to furnish to a
consumer reporting agency, information about a consumer if it knows, should know, or
consciously avoids knowing, that the information it reports is inaccurate.

114. Experian since January 2010 has failed to assure maximum possible accuracy when
preparing Plaintiff's credit reports and therefore it has published and disseminated
erroneous credit information to third parties.

115. **Plaintiff is in possession of dated letters from the alleged original creditor Sprint
showing that she had no such "Account" as allegedly reported by Experian and
Anderson since January 2010.**

116. The actions displayed by Anderson and Experian have been extremely egregious as the
information reported and **allegedly reinvestigated** has not only been in regard to a **non-
existent account**, but it's reporting of that "Account" **has been inconsistent, unreliable
and inaccurate.**

117. As a result of its actions, the Plaintiff has suffered, and will continue to suffer, damage.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ANDERSON IN ITS CAPACITY AS A FURNISHER OF INFORMATION TO THE CREDIT REPORTING AGENCY DEFENDANTS EXPERIAN AND EQUIFAX

118. The Plaintiff repeats and realleges each and every allegation set forth above as if
reasserted and realleged herein.

119. After being informed by the credit reporting agency Defendants that the Plaintiff
disputed the accuracy of the information it was providing as it was a **non-existent
account**, Anderson negligently failed to conduct a proper reinvestigation of the

Plaintiff's dispute pertaining to the "Account" filed with the credit reporting agency Defendants, as required by 15 U.S.C. § 1681s-2(b)(A).

120. Anderson negligently failed to review all relevant information purportedly provided by both credit reporting agencies to Anderson in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

121. Anderson negligently failed since January 2010, to direct both consumer reporting agencies to delete inaccurate information about the Plaintiff pertaining to the "Account", as required by 15 U.S.C. § 1681s-2(b)(C). **Anderson's decision to finally delete the "Account" as noted in ¶84 and ¶109 was egregious.**

122. The Plaintiff by filing a dispute with the defendant consumer reporting agencies in April 2010, invoked her private right of action to assert claims against Anderson arising under 15 U.S.C. § 1681s-2(b). (see ¶ 96 a-k)

123. Anderson is liable to the Plaintiff for the actual damages she has sustained by reason of its violations of the FCRA, related to both Equifax and Experian, in an amount to be determined by the trier of fact, together with her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o. Defendants violated M.G.L. c. 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ANDERSON IN ITS CAPACITY AS A FURNISHER OF INFORMATION TO THE CREDIT REPORTING AGENCY DEFENDANTS EXPERIAN AND EQUIFAX

124. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

125. After being informed by the credit reporting agency Defendants that the Plaintiff
disputed the accuracy of the information it was providing about the **non-existent**
**account**, Anderson willfully failed to conduct a proper investigation of the Plaintiff's
dispute, filed with both credit reporting agency Defendants that she was not liable for
the "Account" appearing on her credit reports, as required by 15 U.S.C. § 1681s-
2(b)(A).

126. Anderson willfully failed to review all relevant information purportedly provided by
both credit reporting agencies to Anderson in conducting its investigation, as required by
15 U.S.C. § 1681s-2(b)(B).

127. Anderson willfully failed since January 2010, to direct both consumer reporting agency
Defendants to delete inaccurate information about the Plaintiff pertaining to the
"Account" as required by 15 U.S.C. § 1681s-2(b)(C). Anderson's decision to finally
delete the "Account" as noted in ¶84 and ¶109 was egregious.

128. The Plaintiff has a private right of action to assert claims against Anderson arising under
15 U.S.C. § 1681s-2(b). Anderson is liable to the Plaintiff for the actual damages or
damages of not less than $100 and not more than $1,000 per violation, per month, per
credit reporting agency Defendant, that she has sustained by reason of such conduct in
violation of the FCRA, together with an award of punitive damages in an amount to be
determined by the trier of fact, as well as her reasonable attorney's fees, and she may
recover therefore pursuant to 15 U.S.C. § 1681n. Defendants violated M.G.L. c. 93A by
virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST ANDERSON IN ITS CAPACITY AS A FURNISHER OF INFORMATION TO THE CREDIT REPORTING AGENCY DEFENDANTS

129. The Plaintiff repeats and realleges each and every allegation set forth above as if

reasserted and realleged herein.

130. Anderson maliciously defamed the Plaintiff by its knowing publication to third-parties

of erroneous information that the Plaintiff was an individual obligor on a **non-existent**

**account.**

131. Anderson had actual knowledge of the false and fraudulent nature of such information

and published it despite having such knowledge.

132. Anderson's actual knowledge of the falsity and reckless disregard for the truth

demonstrates its malice and/or willful intent to injure the Plaintiff.

133. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages

as set forth herein.

134. Anderson is liable to the Plaintiff for the actual damages she has sustained by reason of

such conduct.

135. The Plaintiff is entitled to an award of punitive damages from Anderson in an amount

sufficient to punish it for its conduct related to both Equifax and Experian, as well as to

serve as a deterrent to it and to others to prevent the occurrence of such egregious

conduct in the future.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ANDERSON IN ITS CAPACITY AS A FURNISHER OF INFORMATION TO THE CREDIT REPORTING AGENCY DEFENDANTS

136. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged here.

137. Plaintiff was not an applicant or joint obligor and denies ever having any account, established business relationship, contractual agreement for credit, loans, or services with Anderson or Sprint.

138. Anderson continued to demand that the Plaintiff pay the disputed charges on the "Account" by reporting a past due amount of $310.00 as owing to Experian from January 2010 until on or about February 28, 2012 as shown in ¶84.

139. Anderson continued to demand that the Plaintiff pay the disputed charges on the "Account" by reporting a past due amount of $310.00 as owing to Equifax from January 2010 until on or about March 7, 2012 as shown in ¶109.

140. The Plaintiff is entitled to a declaration by the Court, pursuant to 28 USC § 2201 that she is not liable to Anderson for any of the charges on the "Account" and that she was never an obligor on the "Account".

141. Andersons continued reporting of the "Account" to both credit reporting agency Defendants since January 2010, has caused the Plaintiff to suffer harm. Such harm will continue unless and until Anderson is enjoined from continuing to report to third-parties that she is liable for payment on the "Account".

142. The Plaintiff is entitled to an injunction directing Anderson to correct its records with both credit reporting agency Defendants, so as to delete any reference to the Plaintiff to the "Account" and further to refrain from advising any third parties that the Plaintiff is liable for payment on the "Account".

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST EXPERIAN

143. The Plaintiff repeats and realleges each and every allegation set forth above as if
reasserted and realleged herein.

144. Experian prepared, compiled, issued, assembled, transferred, published and otherwise
reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C.
§ 1681a(d).

145. Such reports were unconscionable as they contained information about a **non-existent
account** (see ¶115) and worse, it's reporting and **alleged reinvestigations** of that **non-
existent account** have been **inconsistent, unreliable and inaccurate** from January
2010 until on or about March 2012 as shown herein.

146. Experian negligently failed to maintain and/or follow reasonable procedures to assure
maximum possible accuracy of the information it reported to one or more third parties
pertaining to the Plaintiff from January 2010 until on or about March 2012 (see ¶ 109),
in violation of 15 U.S.C. § 1681e(b) and M.G.L. c. 93 § 54(b).

147. As a direct and proximate result of such conduct, the Plaintiff suffered actual damage as
set forth herein.

148. Experian is liable to the Plaintiff for the actual damages she has sustained by reason of
such conduct, in an amount to be determined by the trier of fact, as well as her
reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o
and M.G.L. c. 93 § 64. Violating M.G.L. c. 93, § 50-68 is a violation of M.G.L. c. 93A.
Defendants violated Chapter 93A by virtue of violating the FCRA pursuant to 940
C.M.R. § 3.16.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST EXPERIAN

149. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

150. Experian prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C. § 1681a(d).

151. Such reports contained information about the "Account" that was false, misleading and inaccurate from January 2010 until on or about March 2012 (see ¶ 109).

152. Experian willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff or in credit reports supplied to third parties from January 2010 until on or about March 2012 (see ¶ 109) in violation of 15 U.S.C. § 1681e(b) and M.G.L. c. 93 § 54(b).

153. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

154. Experian is liable to the Plaintiff for the actual damages or damages of not less than $100 and not more than $1,000 per violation, per month that she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n and M.G.L. c. 93 § 63. Violating M.G.L. c. 93, § 50-68 is a violation of M.G.L. c. 93A.

Defendants violated M.G.L. c. 93A by virtue of violating the FCRA pursuant to 940

C.M.R. § 3.16.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST EXPERIAN

155. The Plaintiff repeats and realleges each and every allegation set forth above as if

reasserted and realleged herein.

156. Experian negligently failed to adopt and/or follow reasonable procedures to insure the

proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate

information appearing in the Plaintiff's consumer reports as contained in its files

pertaining to the Plaintiff or in credit reports supplied to third parties from January 2010

until on or about March 2012 (see ¶ 109) in violation of 15 U.S.C. § 1681i and M.G.L. c.

93 § 58.

157. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages

as set forth herein.

158. Experian is liable to the Plaintiff for the actual damages she has sustained by reason of

such conduct, in an amount to be determined by the trier of fact, as well as her

reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o

and M.G.L. c. 93 § 64. Violating M.G.L. c. 93, § 50-68 is a violation of M.G.L. 93A.

Defendants violated M.G.L. c. 93A by virtue of violating the FCRA pursuant to 940

C.M.R. § 3.16.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST EXPERIAN

159. The Plaintiff repeats and realleges each and every allegation set forth above as if

reasserted and realleged herein.

160. Experian willfully failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the Plaintiff's consumer reports as contained in its files pertaining to the Plaintiff or in credit reports supplied to third parties from January 2010 until on or about March 2012 (see ¶ 109) in violation of 15 U.S.C. § 1681i and M.G.L. c. 93 § 58.

161. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

162. Experian is liable to the Plaintiff for the actual damages or damages of not less than $100 and not more than $1,000 per violation, per month that she has sustained by reason of such conduct to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees she may recover therefore pursuant to 15 U.S.C. § 1681n and M.G.L. c. 93 § 63. Violating M.G.L. c. 93, § 50-68 is a violation of M.G.L. c. 93A. Defendants violated M.G.L. c. 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST EXPERIAN

163. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

164. Experian maliciously defamed the Plaintiff by its knowing publication of the reports to third-parties containing the "Account" and the alleged fact that it was in a collection status and which falsely described it as an obligation of the Plaintiff.

165. Experian knew or should have known of the false, inaccurate and misleading nature of
such information and published it from January 2010 until on or about March 2012 (see
¶ 109) despite having such knowledge.

166. Experian knew or should have known of the falsity and its reckless disregard for the
truth demonstrates its malice and/or willful intent to injure the Plaintiff.

167. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages
as set forth herein.

168. Experian is liable to the Plaintiff for the actual damages she has sustained by reason of
such conduct.

169. The Plaintiff is entitled to an award of punitive damages from Experian in an amount
sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others
to prevent the occurrence of such egregious conduct in the future.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST EQUIFAX

170. The Plaintiff repeats and realleges each and every allegation set forth above as if
reasserted and realleged herein.

171. Equifax prepared, compiled, issued, assembled, transferred, published and otherwise
reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C.
§ 1681a(d).

172. Such reports were unconscionable as they contained information about a **non-existent
account** (see ¶ 90) and worse, it's reporting and **alleged reinvestigations** of that **non-
existent account** have been **inconsistent, unreliable and inaccurate** from January
2010 until on or about February 2012 as shown herein.

173. Such reports contained information about the "Account" that was false, misleading and inaccurate from January 2010 until on or about February 2012 (see ¶ 84).

174. Equifax negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff from January 2010 until on or about February 2012 (see ¶ 84) in violation of 15 U.S.C. § 1681e(b) and M.G.L. c. 93 § 54(b).

175. As a direct and proximate result of such conduct, the Plaintiff suffered actual damage as set forth herein.

176. Equifax is liable to the Plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o and M.G.L. c. 93 § 64. Violating M.G.L. c. 93, § 50-68 is a violation of M.G.L. c. 93A. Defendants violated M.G.L. c. 93A by virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST EQUIFAX

177. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

178. Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C. § 1681a(d).

179. Such reports contained information about the "Account" that was false, misleading and inaccurate from January 2010 until on or about February 2012 (see ¶ 84).

180. Equifax willfully failed to maintain and/or follow reasonable procedures to assure
    maximum possible accuracy of the information it reported to one or more third parties
    pertaining to the Plaintiff or in credit reports supplied to third parties from January 2010
    until on or about February 2012 (see ¶ 84) in violation of 15 U.S.C. § 1681e(b) and
    M.G.L. c. 93 § 54(b).

181. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages
    as set forth herein.

182. Equifax is liable to the Plaintiff for the actual damages or damages of not less than $100
    and not more than $1,000 per violation, per month that she has sustained by reason of
    such conduct, in an amount to be determined by the trier of fact, together with punitive
    damages in an amount to be determined by the trier of fact, as well as her reasonable
    attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n and
    M.G.L. c. 93 § 63. Violating M.G.L. c. 93, § 50-68 is a violation of M.G.L. c. 93A.
    Defendants violated M.G.L. c. 93A by virtue of violating the FCRA pursuant to 940
    C.M.R. § 3.16.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST EQUIFAX

183. The Plaintiff repeats and realleges each and every allegation set forth above as if
    reasserted and realleged herein.

184. Equifax negligently failed to adopt and/or follow reasonable procedures to insure the
    proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate
    information appearing in the Plaintiff's consumer reports as contained in its files
    pertaining to the Plaintiff or in credit reports supplied to third parties from January 2010

until on or about February 2012 (see ¶ 84) in violation of 15 U.S.C. § 1681i and M.G.L. c. 93 § 58.

185. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

186. Equifax is liable to the Plaintiff for the actual damages she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o and M.G.L. c. 93 § 64. Violating M.G.L. c. 93, § 50-68 is a violation of M.G.L. c. 93A. Defendants violated M.G.L. c. 93A by virtue of violating the FCRA pursuant to 940 C.M.R. § 3.16.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST EQUIFAX

187. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

188. Equifax willfully failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the Plaintiff's consumer reports as contained in its files pertaining to the Plaintiff or in credit reports supplied to third parties from January 2010 until on or about February 2012 (see ¶ 84) in violation of 15 U.S.C. § 1681i and M.G.L. c. 93 § 58.

189. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

190. Equifax is liable to the Plaintiff for the actual damages or damages of not less than $100 and not more than $1,000 per violation, per month that she has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees she may recover therefore pursuant to 15 U.S.C. § 1681n and M.G.L. c. 93 § 63. Violating M.G.L. c. 93, § 50-68 is a violation of M.G.L. c. 93A. Defendants violated M.G.L. c. 93A by virtue of violating the FCRA pursuant to 940 C.M.R. § 3.16.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST EQUIFAX

191. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

192. Equifax maliciously defamed the Plaintiff by its knowing publication to third-parties reports containing the "Account", and the alleged fact that it was in a collection status and which falsely described it as an obligation of the Plaintiff.

193. Equifax knew or should have known the false, inaccurate and misleading nature of such information and published it from January 2010 until on or about February 2012 (see ¶ 84) despite having such knowledge.

194. Equifax knew or should have known of the falsity and its reckless disregard for the truth demonstrates its malice and/or willful intent to injure the Plaintiff.

195. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

196. Equifax is liable to the Plaintiff for the actual damages she has sustained by reason of such conduct.

197. The Plaintiff is entitled to an award of punitive damages from <u>Equifax</u> in an amount
sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others
to prevent the occurrence of such egregious conduct in the future.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ANDERSON AND DIVERSIFIED IN THEIR CAPACITY AS DEBT COLLECTORS PURSUANT TO FDCPA AND M.G.L.

198. The Plaintiff repeats and realleges each and every allegation set forth above as if
reasserted and realleged herein.

199. Anderson within five days of its initial (telephone) communication failed to send
Plaintiff written notice of her rights to dispute the validity of the "Account" in violation
of 209 C.M.R. § 18.18 (1)(a-e) and therefore <u>denied Plaintiff further notification of her</u>
<u>rights related to the "Account"</u> in violation of 209 C.M.R. § 18.18(2) and 209 C.M.R. §
18.18(3). (see ¶ 35)

200. Anderson violated 209 C.M.R. § 18.14(2) and 209 C.M.R. § 18.16(8) when they spoke
to Plaintiff's son on the telephone (see ¶ 38), as they should have known that the
information was false and further that they did not have the express consent of the
Plaintiff to communicate with him or any third party in connection with the collection of
the "Account". (see ¶ 55)

201. The Plaintiff and her son were harassed and abused as a consequence of Andersons
conduct (see ¶¶ 38-44.) in violation of 209 C.M.R. § 18.15(2) and 209 C.M.R. §
18.15(4)

202. Anderson violated 209 C.M.R. § 18.14(2) and 209 C.M.R. § 18.16(8) when they spoke
to Plaintiff's ex fiancé on the telephone (see ¶ 39), as they should have known that the

information was false and further that they did not have the express consent of the Plaintiff to communicate with him or any third party in connection with the collection of the "Account".

203. The Plaintiff and her ex fiancé were harassed and abused as a consequence of Andersons conduct (see ¶¶ 38-44) in violation of 209 C.M.R. § 18.15(1) and 209 C.M.R. § 18.15(4).

204. Anderson and Diversified violated the 15 U.S.C. § 1692e(2) and 209 C.M.R. § 18.16(2)(a) in their communications by false representation of the character, amount, and legal status of the debt. **Plaintiff is in possession of dated letters from the alleged original creditor Sprint showing that she had no such "Account" as alleged by Anderson and Diversified.** (see ¶ 55)

205. Anderson used unfair practices thus violating 209 C.M.R. § 18.17(1) by attempting collection of an amount that was not expressly authorized by any agreement. (see ¶ 55)

206. Diversified used unfair practices thus violating 15 U.S.C. § 1692f(1) and 209 C.M.R. § 18.17(1) by attempting collection of an amount that was not expressly authorized by any agreement. (see ¶ 55)

207. Anderson violated 209 C.M.R. § 18.17(11) by reporting to Experian and Equifax in its name alleged experiences with the Plaintiff. (see ¶ 55)

208. Anderson violated 209 C.M.R. § 18.15(4) when the Plaintiff had to constantly stop what she was doing and screen her telephone calls, as this conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff. (see ¶ 43 )

209. Diversified violated 15 U.S.C. § 1692d and 209 C.M.R. § 18.15(4) when the Plaintiff and her guests and family had to constantly stop what they were doing and screen her telephone calls, as this conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff. (see ¶ 43)

210. Diversified used an automatic telephone dialing system (ATDS) to call Plaintiffs cell phone over ten (10) times from January 12, 2012 thru February 23, 2012 in violation of 47 U.S.C. §227(b)(1)(A)(iii) and therefore in regards to this cause of action, was a deceptive means to attempt to collect the "Account", in violation of 15 U.S.C. § 1692e(10).

211. Anderson violated 15 U.S.C. § 1692e(2) and 209 C.M.R. § 18.16(8) when it communicated false credit information about the "Account" to Diversified, Experian and Equifax which was a deceptive means to attempt to collect the "Account" and as such violated 15 U.S.C. § 1692e(10) and 209 C.M.R. § 18.16(10).

212. Since April 2010, Anderson has attempted to collect the "Account", by reporting to Experian and Equifax without first providing Plaintiff her rights as required by 209 C.M.R. § 18.18(1) and therefore denied Plaintiff the right to have Anderson cease its erroneous collection reporting in violation of 15 U.S.C. § 1692g(b) and 209 C.M.R. § 18.18(2). (see ¶ 35)

213. On or about January 16, 2012, Plaintiff received a letter from Diversified attempting to collect the same "Account" at the same time as Anderson in violation of 15 U.S.C. § 1692f. (see ¶ 48)

214. Anderson attempted to collect the "Account" when it sold, assigned or passed the
    "Account" to Diversified and in turn violated 209 C.M.R. § 18.18(1) because it had not
    first provided Plaintiff verification of the "Account" and thus violated 15 U.S.C. §
    1692g(b). (see ¶ 37)

215. Diversified failed to cease collection efforts prior to mailing Plaintiff verification of the
    "Account" she had requested in writing by USPS certified mail, in violation of 209
    C.M.R. § 18.18(2) and thus violated 15 U.S.C. § 1692g(b). (see ¶ 50)

216. Anderson and Diversified are both liable to the Plaintiff for the damage she has suffered
    as a result of such illegal conduct as well as for statutory damages and the Plaintiff may
    recover same pursuant to 15 USC § 1692k(a)(1), 1692k(a)(2)(A) and 1692k(b)(1). In
    addition, the Plaintiff may recover costs and attorney's fees pursuant to 15 USC § 1692k
    (a)(3). Violating M.G.L. c. 93, § 24-48 (209 C.M.R. § 18 et seq) is a violation of M.G.L.
    c. 93A. Defendants violated M.G.L. c. 93A by virtue of violating the FDCPA pursuant
    to 940 C.M.R. §3.16.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ANDERSON  AND DIVERSIFIED IN THEIR CAPACITY AS  DEBT COLLECTORS PURSUANT TO TCPA AND M.G.L.

217. The Plaintiff repeats and re-alleges each and every allegation set forth above as if
    reasserted and realleged herein.

218. Plaintiff received over ten (10)  calls from Diversified who used an automatic telephone
    dialing system (ATDS) to call her cell phone from January 12, 2012 thru February 23,
    2012, in violation of 47 U.S.C. § 227(b)(1)(A)(iii). (see ¶ 53)

219. Plaintiff received over ten (10) calls from Diversified who left prerecorded messages on her cell phone from January 12, 2012 thru February 23, 2012 in violation of 47 U.S.C. § 227(b)(1)(A)(iii). (see ¶ 53)

220. Plaintiff received over ten (10) calls from Diversified who failed to state at the beginning of their prerecorded voice messages the identity of the business, individual, or other entity initiating the call in violation of 47 U.S.C. § 227(d)(3)(A)(i). (see ¶ 53)

221. Plaintiff received over ten (10) calls from Diversified whose ATDS failed to release Plaintiffs telephone line within 5 seconds after its prerecorded message had finished, in order to allow the Plaintiffs telephone to be used to make or receive other calls in violation of 47 U.S.C. § 227(d)(3)(B). (see ¶ 53)

222. Plaintiff does not have an established business relationship within the meaning of 47 U.S.C. § 227 with Diversified or Anderson and Plaintiff never gave Diversified or Anderson her express consent to call her at any time. (see ¶ 52)

223. Diversified has violated 47 U.S.C. § 227 four (4) times per call multiplied by ten (10) calls as stated herein. Pursuant to 47 U. S. C. § 227(b)(3) Plaintiff can recover for actual monetary loss from such violations, or receive $500 in damages for each such violation per call, whichever is greater, or both such actions. If the court finds that the defendant willfully or knowingly violated this subsection the court may, in its discretion, increase the amount of the award to an amount equal to not more than three (3) times the amount available under subparagraph (B) per violation. Defendants further violated M.G.L. c. 93A by virtue of violating the TCPA pursuant to 940 C.M.R. § 3.16.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DIVERSIFIED IN THEIR CAPACITY AS A USER OF INFORMATION PURSUANT TO FCRA AND M.G.L.

224. The Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and realleged herein.

225. TransUnion is a credit reporting agency within the meaning of 15 U.S.C. § 1681a(f)

226. FCRA 15 U.S.C. § 1681b defines the permissible purpose for which a person may obtain a consumer credit report. Diversified obtained Plaintiff's consumer credit report on January 10, 2012 without a permissible purpose. (see ¶ 47)

227. Such permissible purpose as defined by Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681b, has **limited circumstances granting permissible purpose** under section 1681(b) which applied to Diversified.

228. At the time Diversified obtained Plaintiff's consumer credit report on or about January 10, 2012 it did not meet any of the **limited circumstances** which are as follows;

   A. Plaintiff had not authorized the consumer reporting agency TransUnion to furnish her consumer report to Diversified.

   B. Plaintiff had not authorized Diversified to obtain her consumer report from TransUnion.

   C. Plaintiff had not applied for any credit, loan, or services with Diversified.

   D. Plaintiff did not have any contractual relationship for credit, loan, or services with Diversified.

   E. Plaintiff did not owe any debt to Diversified.

   F. Plaintiff did not owe any debt as the result of a judgment to Diversified.

G. Plaintiff had not applied for any employment with Diversified.

H. Plaintiff had not applied for any insurance from Diversified.

I. Plaintiff did not have any existing account or credit obligation with Diversified.

J. Plaintiff was not named as an "authorized user" on any account with Diversified.

K. No court having jurisdiction issued any order to TransUnion to furnish Plaintiff's consumer report to Diversified.

L. No head of State or local child support enforcement agency requested TransUnion to provide Plaintiff's consumer report to Diversified.

M. No agency administering a state plan under section 454 of the Social Security Act (42 U.S.C. § 654) requested TransUnion to provide Plaintiff's consumer report to Diversified.

N. Plaintiff had not applied for any license or other benefit granted by a governmental instrumentality through Diversified.

O. Plaintiff had not received any "firm offer of credit or insurance" from Diversified.

229. Plaintiff sent a notice to Diversified in an attempt to mitigate the issues within this complaint and to reach a settlement before taking any civil actions against it. The correspondence was returned undeliverable, therefore Plaintiff had no choice but to seek damages in this honorable court.

230. The action of Diversified obtaining the Plaintiff' consumer credit report on or about
January 10, 2012 with no permissible purpose or without Plaintiff's consent, was a
willful violation of the FCRA, 15 U.S.C. § 1681b and an egregious violation of
Plaintiff's right to privacy.

231. Diversified had a duty to properly ascertain if there was any **legitimate** permissible
purpose before obtaining Plaintiff's consumer credit report and Diversified breached
said duty by failing to do so. There was no account and/or debt that Diversified had
any right to collect in order to have had a permissible purpose to obtain Plaintiff's
consumer credit report and therefore Plaintiff is entitled to damages. (see ¶ 55)

232. Diversified is liable to the Plaintiff for the actual damages or damages of not less than
$100 and not more than $1,000 that she has sustained by reason of such conduct in
violation of the FCRA, together with an award of punitive damages in an amount to be
determined by the trier of fact, as well as her reasonable attorney's fees, and she may
recover therefore pursuant to 15 U.S.C. § 1681n. Defendants violated M.G.L. c. 93A by
virtue of violating the FCRA pursuant to 940 C.M.R. §3.16.

**WHEREFORE**, the Plaintiff respectfully requests the following relief;

An order directing that Experian and Equifax immediately delete all of the inaccurate
information from Plaintiff's credit reports and files and;

An order directing that Equifax and Experian send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last two years Plaintiff's updated and corrected credit report information and;

An order directing that Diversified and Anderson be barred from;

     a. placing, selling or assigning the "Account" to any entity for future collection and;

     b. attempting to collect any charges from the Plaintiff pertaining to the "Account" and;

     c. reporting the "Account" to any third party as belonging to the Plaintiff and;

An order that Anderson and Diversified establish an ongoing training program for its employees on the subject of consumer rights related to federal and Massachusetts law and; That Plaintiff be awarded relief against each and every defendant for the annoyance, abuse and harassment she suffered due to defendant's unlawful acts, actions, conduct and omissions including but not limited to state claims for defamation and invasion of privacy, damage to her credit accounts, loss of ability to purchase and benefit from credit, emotional distress, annoyance, aggravation and frustration and that the awarded relief where applicable to the law as stated herein will be fair and reasonable in regard to statutory and/or actual damages, punitive damages, treble, multiple damages, pre and post judgment interest, litigation expenses and other costs of litigation, reasonable attorney's fees (should Plaintiff retain counsel after service of this complaint) and such additional relief as this honorable Court deems just and reasonable.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: June 15, 2012

Respectfully submitted,

Dawn May Jenkins
c/o 33 Eastern Avenue, Unit 2
Lynn, Massachusetts 01902
978-332-3798 or 781-710-5527