**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **DAWN M. JENKINS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.  1:12-CV-10622-WGY** |
| ) | |
| **AFNI, INC.; DIVERSIFIED** ) | |
| **CONSULTANTS, INC.; EQUIFAX** ) | |
| **INFORMATION SERVICES LLC;** ) | |
| **and EXPERIAN INFORMATION** ) | |
| **SOLUTIONS, INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR SUMMARY JUDGMENT OF**
**DEFENDANTS EQUIFAX INFORMATION SERVICES LLC**
**AND EXPERIAN INFORMATION SOLUTIONS, INC.**

Defendants Equifax Information Services LLC ("Equifax") and Experian Information

Solutions, Inc. ("Experian") submit the following memorandum of law in support of their Joint

Motion for Summary Judgment.  For the reasons discussed below, the motion should be granted

and all of Plaintiff's claims against Equifax and Experian dismissed.

**INTRODUCTION AND SUMMARY OF RELEVANT FACTS**

**I.    PLAINTIFF'S OWNERSHIP OF THE SPRINT NEXTEL ACCOUNT AND AFNI'S**
**ATTEMPT TO COLLECT**

This case involves a Sprint Nextel collection account, in the amount of $310.63, that first

appeared in Plaintiff's Equifax and Experian credit files in 2010.[1]  (*See* SMF ¶ 35.)  The account

---

[1] The facts of this case are set forth in detail in a separate Statement of Undisputed Material Facts ("SMF").
Only a brief summary of those facts is presented here.

originated from a cell-phone service agreement Plaintiff had with Nextel in 2005. (*See id*. ¶¶ 4, 24.)  In September 2005, Plaintiff became dissatisfied with her service due to a large number of "dropped calls" and cancelled her Nextel service agreement.  (*See id*. ¶¶ 13-15.)  According to Nextel's billing records, as of November 6, 2005, Plaintiff had an account balance of $310.63, which included a $200 early termination fee.  (*Id*. ¶¶ 12, 20.)  Plaintiff did not pay this bill.  (*See id*. ¶¶ 19, 24, 32.)

Subsequently, Defendant Afni, Inc. ("Afni") attempted to collect the past-due charges from Plaintiff on behalf of Sprint, which had previously merged with Nextel (hereinafter "Sprint Nextel").  (*See id*. ¶¶ 7, 24.)  Afni's collection attempts were unsuccessful and, in 2010, Afni reported the unpaid collection account of $310.63 to Equifax and Experian, both of whom are consumer reporting agencies ("CRAs").  (*Id*. ¶¶ 3, 35.)

Plaintiff apparently did not make the connection between Sprint and Nextel until much later and, consequently, was confused as to the origin of the Afni/Sprint collection account.  (*See id*. ¶¶ 38-43.)  Plaintiff informed Afni that the account was not hers and that it was "non-existent." (Doc. 8, ¶¶ 33, 34.)  Later, Plaintiff disputed the account with Equifax and Experian, claiming that she "was not liable for the Sprint 'collection account' appearing on her credit reports as it was a non-existent debt." (*Id*. ¶ 16.)  Plaintiff categorically "denies ever having any established business relationship, contractual agreement for credit, loans, or services with . . . Sprint" (*id*. ¶¶ 61, 101), and alleges throughout her complaint that the account was not hers (*see*, *e.g*., *id*. ¶¶ 23, 33, 125).[2]

Plaintiff's assertion that the account was not hers is demonstrably false.[3]  Indeed, in a

---

[2] Plaintiff admits that the Sprint Nextel account no longer appears in her credit files.  (Doc. 8 ¶¶ 84, 109.)

[3] Plaintiff asserts that she "is in possession of dated letters from the alleged original creditor Sprint showing that she had no such 'Account'" as reported by Defendants.  (Doc. 8, ¶¶ 33, 90, 115.)  The "letters" Plaintiff relies on are in fact a series of email exchanges between Plaintiff and representatives of Sprint Nextel.  (*See* SMF ¶ 38-49.)

letter Plaintiff sent to Afni in July 2012 (after she filed this lawsuit), Plaintiff conceded that she

had an account with Nextel in 2005, but claimed that Nextel had agreed not to charge her an

early termination fee.  (*See* SMF ¶¶ 14, 15.)

## II.  DETERMINATION OF THE AMOUNT OWED ON PLAINTIFF'S SPRINT NEXTEL ACCOUNT

According to records maintained by Afni in the regular course of its business, Sprint

Nextel did not agree to waive the early termination fee.  (*Id.* ¶ 32-34.)  It did, however, credit

Plaintiff's account $32.83 to compensate her for dropped calls.  (*Id.* ¶ 34.)  This credit is

reflected in the outstanding balance of $310.63.  (*See id.* ¶¶ 32, 34.)

Plaintiff never informed Equifax or Experian of her denial of responsibility for the early

termination fee and did not amend her complaint to state a claim based on the fee.  (*See* Doc. 8

¶¶ 16, 23, 33, 61, 101, 125.)  Plaintiff also never denied – even in her July 2012 letter to Afni –

owing the difference between the early termination fee and the outstanding balance on the Sprint

Nextel account.  (*See id.* ¶¶ 14, 15, 29, 31.)

## III.  PLAINTIFF'S CLAIMS AGAINST EQUIFAX AND EXPERIAN

Plaintiff alleges that Equifax and Experian violated the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. §§ 1681-1681x, and parallel provisions of the Massachusetts Fair Credit

Reporting Act ("MFCRA"), Mass. Gen. Laws ch. 93, §§ 50-68.  (*See* Doc. 8 ¶¶ 143-162, 170-

190.)  Specifically, she alleges that Equifax and Experian negligently and/or willfully failed to

maintain reasonable procedures for ensuring the accuracy of her consumer credit report – in

alleged violation of FCRA § 1681e(b) and MFCRA § 54(b) – and negligently and/or willfully

---

The emails do not demonstrate that Plaintiff had no account with Sprint Nextel.  Rather, they reveal only that Sprint Nextel was unable to locate an account for Plaintiff based on the information she had provided.  (*Id.* ¶¶ 40-48.)  The Sprint Nextel agents instructed Plaintiff to contact the collection agency to obtain the original nine-digit Sprint Nextel account number.  (*Id.* ¶ 46.)  Plaintiff has presented no evidence that she responded to this request, or that she ever provided Sprint Nextel with the correct account number.

failed to conduct reasonable reinvestigations when she disputed that information – in alleged violation of FCRA § 1681i and MFCRA § 58. (*See* Doc. 8 ¶¶ 146, 152, 156, 160, 174, 180, 184, 188.)  Plaintiff also brings common-law defamation claims against Equifax and Experian based on the same allegedly inaccurate information. (*See id*. ¶¶ 163-169, 191-197.)

Each of Plaintiff's claims against Equifax and Experian fails for the simple reason that she, in fact, (1) owned the Sprint Nextel account and (2) owed money to Sprint Nextel for her prior cell-phone service.  For these reasons, Plaintiff cannot establish that her credit file contained material inaccuracies, which is required for each of her claims against Equifax and Experian.

## ARGUMENT

Summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  The moving party may succeed on a motion for summary judgment by showing "that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour*, 63 F.3d at 37 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Rogers*, 902 F.2d at 143 (quoting *Anderson*, 477 U.S. at 249-50)

(citations and footnote omitted)). The Court "must disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation" from the non-moving party. *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008) (quotation marks omitted). "To defeat a motion for summary judgment, the evidence offered by the adverse party cannot be 'merely colorable' or speculative." *Thompson*, 522 F.3d at 175 (quoting *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993)).

I.   **SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S FCRA CLAIMS BECAUSE SHE CANNOT ESTABLISH THAT HER EQUIFAX OR EXPERIAN CREDIT FILE CONTAINED INACCURATE INFORMATION.**

A.   **Inaccuracy Is A Required Element Of Proof For Plaintiff's FCRA Claims.**

Plaintiff's first and second counts against Equifax and Experian allege negligent and willful violations of FCRA § 1681e(b) and MFCRA § 54(b). *See* Doc. 8 ¶¶ 146, 152, 174, 180. Specifically, Plaintiff alleges that Equifax and Experian violated these provisions by reporting a "non-existent account" as hers. *Id.* ¶¶ 145, 152, 172, 174. Plaintiff's third and fourth counts against Equifax and Experian allege negligent and willful violations of FCRA § 1681i and MFCRA § 58 based on their allegedly deficient reinvestigations of the disputed account. *See* Doc. 8 ¶¶ 156, 160, 184, 188.

Section 1681e(b) requires CRAs, when "prepar[ing] a consumer report," to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).[4]  Section 1681i requires CRAs, when notified of a dispute by a consumer regarding "the completeness or accuracy of any

---

[4] The parallel provision of the MFCRA states: "Whenever a consumer reporting agency prepares or disseminates a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Mass. Gen. Laws ch. 93, § 54(b). Plaintiff's MFCRA claims should be dismissed for the same reasons discussed with respect to her FCRA claim. *See Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81, 89-90 (D. Mass. 2001) (granting summary judgment on MFCRA claim for the same reasons as under the FCRA where the claim was "premised solely upon conduct by Equifax that also form[ed] the basis for the plaintiffs' FCRA claims").

item of information contained in a consumer's file," to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."  15 U.S.C. § 1681i(a)(1)(A).[5]

"A claim of noncompliance with section 1681e(b) consists of four elements: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry."  *Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81, 85 (D. Mass. 2001) (quotations omitted).  To establish a claim under § 1681i(a), a consumer must prove, among other things, that (1) the disputed information was not accurate, (2) the CRA failed to reinvestigate or conducted an unreasonable reinvestigation, and (3) the agency's failure to follow reasonable procedures caused the plaintiff's alleged harm.  *See Ruffin–Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005); *Cahlin*, 936 F.3d at 1156.

Accordingly, Plaintiff must prove, for each of her FCRA and MFCRA claims, that her credit file "sport[ed] an *actual* inaccuracy" related to the Sprint Nextel account.  *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 66-67 (1st Cir. 2008) (emphasis original); *see also Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 2001) (affirming summary judgment for CRA on § 1681e(b) and § 1681i(a) claims based on accuracy of the reported information).  If Plaintiff cannot satisfy this initial burden, as a matter of law, she cannot establish a violation of the FCRA, and this Court need not inquire further as to the reasonableness of the procedures adopted by Equifax and Experian.  *See DeAndrade*, 523 F.3d at 68; *Cahlin*, 936 F.2d at 1156.  Because Plaintiff cannot establish inaccuracy related to the Sprint

---

[5] The parallel provision of the MFCRA contains almost identical language.  *See* Mass. Gen. Laws ch. 93 § 58(a).

Nextel account, Equifax's and Experian's Joint Motion for Summary Judgment should be granted.

**B.      Plaintiff Cannot Prove That The Sprint Nextel Account Information Was Inaccurate.**

**1.      Equifax And Experian Correctly Reported The Account As Plaintiff's.**

All of Plaintiff's claims against Equifax and Experian are premised on her assertion that the Sprint Nextel account was "non-existent," or did not belong to her.  Throughout this lawsuit, as well as in her disputes with Equifax and Experian, Plaintiff has denied all responsibility for the account.  *See* Doc. 8 ¶¶ 16, 23, 33, 125.  The facts, however, tell a different story.  Indeed, Plaintiff herself conceded responsibility for the account in a letter she sent to Afni in July 2012. *See* SMF ¶¶ 14, 15.  Because the only error alleged by Plaintiff – that Equifax and Experian incorrectly attributed the Sprint Nextel account to her – is demonstrably false, summary judgment should be granted in favor of Equifax and Experian on the FCRA claims.  Plaintiff cannot demonstrate that the report of the Sprint Nextel account as hers was inaccurate.

**2.      Plaintiff's Legal Dispute With Sprint Nextel Over Ownership Of The Account Is Not The Type Of Dispute That CRAs Can Or Should Be Expected To Resolve.**

Alternatively, summary judgment should be granted based on the nature of the dispute with respect to ownership of the Sprint Nextel account.  It is not the type of dispute CRAs can or should be expected to resolve.  Equifax accurately reported the information provided to it by Afni.  Plaintiff has "crossed the line between alleging a factual deficiency that [a CRA] was obliged to investigate pursuant to the FCRA and launching an impermissible collateral attack against a lender by bringing an FCRA claim against [a CRA]."  *DeAndrade*, 523 F.3d at 68.

In this Circuit's leading case of *DeAndrade*, the First Circuit considered whether a consumer who had denied responsibility for a mortgage loan could maintain FCRA claims

against a CRA that had reported the mortgage information provided by the lender.   523 F.3d at 64-65.   The consumer admitted obtaining a loan but denied obtaining a mortgage.   *Id.*   Under those facts, the First Circuit held that the plaintiff's FCRA claims failed as a matter of law because the issue the consumer was "attacking is the mortgage's validity," and "[w]hether the mortgage [was] valid turn[ed] on questions that [could] only be resolved by a court of law."   *Id.* at 68.   The consumer's dispute did not involve "a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a [CRA] is neither qualified nor obligated to resolve under the FCRA."   *Id*; *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010).   In other words, "when a credit reporting agency correctly reports the information furnished by the creditor, the credit report is considered as 'accurate' within the meaning of the FCRA, even when there is an ongoing dispute as to the validity of the debt."   *Gauci v. CitiMortgage*, 2012 WL 1535654, *6 (C.D. Cal. Apr. 30, 2012) (citing *Carvalho* and granting CRAs' motion for summary judgment).

Because Plaintiff does not contend that Equifax or Experian misreported information provided by Sprint Nextel or the collection agency defendants, she cannot prove, as a matter of law, that Equifax or Experian reported inaccurate information for purposes of the FCRA.   *See Gauci*, 2012 WL 1535654, *6.   Other courts have found in favor of CRAs in similar, if not identical, circumstances.   *See, e.g., Fashakin v. Nextel Comm'ns*, 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009) (relying on *DeAndrade*); *Omar v. Experian Info. Solutions, Inc.*, 2012 WL 2930778 (S.D. Ind. July 18, 2012) (relying on *DeAndrade* and *Carvalho*).   For this alternative reason, summary judgment should be granted in favor of Equifax and Experian on Plaintiff's FCRA claims.

**II.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S DEFAMATION CLAIM FOR TWO INDEPENDENT REASONS.**

**A.    Plaintiff's Defamation Claim Is Preempted By The FCRA.**

Plaintiff alleges that Equifax and Experian defamed her by publishing "reports containing the 'Account' and the alleged fact that it was in a collection status and which falsely described it as an obligation of the Plaintiff."  Doc. 8 ¶¶ 164, 192.  This claim fails because defamation claims are preempted by the FCRA.  The FCRA states that "no consumer may bring any action or proceeding in the nature or defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).

The FCRA "is a comprehensive statutory scheme designed to regulate the consumer reporting industry."  *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010); *see also Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980).  It provides a broad array of remedies for consumers who feel they have been wronged by consumer reporting errors, including actual damages where a negligent violation is proven, and statutory and possibly punitive damages where a willful violation is proven.  *See* 15 U.S.C. §§ 1681n, 1681o.  The trade-off for these federally mandated obligations and remedies is that consumers alleging wrongdoing by CRAs must bring their claims pursuant to the FCRA.  *See Ross*, 625 F.3d at 814.  Other potential claims, such as defamation, are precluded, or "preempted," except in very limited circumstances – those involving "malice" or "willful intent to injure." *Id.*

"False information is reported with 'malice or willful intent to injure' for purposes of section 1681h(e) if done with knowledge that it was false or with reckless disregard of whether it was false or not." *Thornton*, 619 F.2d at 705 (quotations omitted).  In *Morris v. Equifax Info.*

*Servs.*, 457 F.3d 460 (5th Cir. 2006), for example, the Fifth Circuit held that a consumer defamation claim was preempted by the FCRA under circumstances similar to those present here. Although the CRA knew that the consumer had disputed certain information in the consumer's credit file, that fact alone did "not show that [the CRA] knew these statements were false." *Morris*, 457 F.3d at 471. Allegations of malice "based on pure speculation" are "insufficient to establish a genuine issue of material fact for purposes of summary judgment." *Joiner v. Revco Discount Drug Centers, Inc.*, 467 F. Supp. 2d 508, 515 (W.D.N.C. 2006).

Here, Plaintiff does not contend that Equifax or Experian reported anything other than information provided to them by Sprint Nextel and/or the collection-agency Defendants. Furthermore, the evidence demonstrates, contrary to the disputes Plaintiff sent to Equifax and Experian (*see* Doc. 8 ¶ 16), that Plaintiff was responsible for the Sprint Nextel account. Under these circumstances, an inference of malice simply does not arise. Because Plaintiff has not brought "forth evidence proving the key element of malice – that [the CRAs] knew the [disputed] information was incorrect at the time of reporting," *Ross*, 625 F.3d at 814, summary judgment should be granted in favor of Equifax and Experian on Plaintiff's defamation claim.

### B. Plaintiff Cannot Establish Defamation Under State Law Because The Information Reported Regarding Sprint Nextel Was Substantially True.

Plaintiff's defamation claim also fails on the alternative ground of truth. "The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation." *Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 90 (D. Mass. 2010).[6] While Plaintiff bases her defamation claim on allegations of Equifax and Experian's issuance of reports displaying the 'Account' as an obligation of Plaintiff and in a collection status (Doc. 8 ¶¶ 164, 192), as has been

---

[6] Other requirements for a defamation claim include proof that: "(1) the defendant published an oral (slander) or written (liable) statement; (2) the statement was about, and concerned, the plaintiff; . . . and (5) the plaintiff suffered economic loss, or the claim is actionable without proof of economic loss." *Noonan*, 707 F. Supp. 2d at 90.

shown, the evidence conclusively demonstrates that the Sprint Nextel account was in fact Plaintiff's obligation and was in fact in a collection status.  Accordingly, Plaintiff cannot prove that any of the information on which she relies for her defamation claim was false.  For this alternative reason, summary judgment should be granted in favor of Equifax and Experian on that claim.

Any attempt by Plaintiff to alter her claim to allege defamation based on the amount of the debt would be futile.  In Massachusetts, "if a statement is 'substantially true,' it cannot be defamatory."  *Noonan*, 707 F. Supp. 2d at 90 (citing *Reilly v. Associated Press*, 797 N.E.2d 1204, 1211 (Mass. App. Ct. 2003)).  The focus is not on the minor details of an allegedly defamatory statement, but rather on its "substantial truth."  *Reilly*, 797 N.E.2d at 1211; *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) ("The common law of libel . . . overlooks minor inaccuracies and concentrates upon substantial truth.").  Accordingly, "a statement is not necessarily false, for purposes of a defamation claim, simply because it contains inaccuracies."  *LaChance v. Boston Herald*, 942 N.E.2d 185, 188-89 (Mass. App. Ct. 2011) (citations omitted).  Rather, the statement must "have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 517; *see also LaChance*, 942 N.E.2d at 188-89 ("minor inaccuracies will not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified") (quotations omitted).

In *LaChance*, the Massachusetts Court of Appeals considered whether a statement in a newspaper article regarding "dating" between prison inmates and unincarcerated individuals was defamatory.  The article misstated the plaintiff-prisoners crime as manslaughter, rather than the crime for which he was actually convicted – rape.  The court concluded that the error did not constitute a falsity for purposes of the prisoner's defamation claim, especially in the context in

which the statement was made. *See* 942 N.E.2d at 188-89. "The purpose of the defendants'
articles was to create public awareness of the dangers of responding to online advertisements by
violent incarcerated prisoners. Publication of the plaintiff's actual criminal record in the first
article would have been, at the very least, equally as damaging to the plaintiff's reputation in the
mind of a reader." *Id.* at 189; *see also Noonan*, 707 F. Supp. 2d at 90-91 (statement that plaintiff
had "never denied stealing" from his employer was not defamatory where it was undisputed that
he had falsified his travel and expense vouchers).

Similarly, in the context of a credit report, the effect on the mind of a reader observing
that Plaintiff had an outstanding balance of $310.63 on her Sprint Nextel account would not be
materially different from the effect of an outstanding balance of $110.63. In either circumstance,
the balance demonstrates that Plaintiff had not paid her cell-phone bill and had allowed the
account to go into collections. For purposes of determining creditworthiness, which is the main
purpose for obtaining a credit report, the difference in the balances is immaterial. For these
reasons, summary judgment should be granted in favor of Equifax and Experian on Plaintiff's
defamation claim.

## CONCLUSION

For the reasons discussed above, Equifax's and Experian's Joint Motion for Summary
Judgment should be granted and all claims against them dismissed.

Dated:  April 24, 2013

Respectfully submitted,

**EQUIFAX INFORMATION SERVICES LLC**
by its attorneys,

/s/ Jason B. Curtin
Jason B. Curtin (BBO #682120)
Robinson & Cole LLP
One Boston Place, 25th Floor
Boston, MA  02108-4404
T: 617-557-5900 / F: 617-557-5999
jcurtin@rc.com

/s/ Brian J. Olson
Brian J. Olson (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree St. N.E.
Atlanta, Georgia 30309
T: 404-215-5806/ F: 404-572-5100
bjolson@kslaw.com

**EXPERIAN INFORMATION SOLUTIONS, INC.**
by its attorneys,

/s/ Maureen McAneny
Maureen P. McAneny (admitted *pro hac vice*)
Jones Day
1420 Peachtree Street, NE, Suite 800
Atlanta, Georgia 30309
Tel: (404) 581-8327
Fax: (404) 581-8330
mmcaneny@jonesday.com

/s/ Robert S. White
Robert S. White (BBO #552229)
BourgeoisWhite, LLP
One West Boylston Street, Suite 307
Worcester, MA 01605
Tel: (508) 753-7038
Fax: (508) 756-1613
rsw@bourgeoiswhite.com

## <u>CERTIFICATE OF SERVICE</u>

I, Jason B. Curtin, certify that this document, filed through the ECF system, was sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies were sent to those indicated as non-registered participants.

| | |
|---|---|
| **Mark E. Bamford**<br>Boston University Civil Litigation Program<br>197 Friend Street, 2nd Flr.<br>Boston, MA 02114<br>*Attorney for Plaintiff* | **Maureen P. McAneny**<br>Jones Day<br>1420 Peachtree Street, N.E., Suite 800<br>Atlanta, GA 30309<br>*Attorney for Experian Information Solutions, Inc.* |
| **John J. O'Connor**<br>Peabody & Arnold LLP<br>Federal Reserve Plaza<br>600 Atlantic Avenue<br>Boston, MA 02210-2261<br>*Attorney for Defendant Afni, Inc. and Diversified Consultants, Inc.* | **Robert S. White**<br>BourgeoisWhite, LLP<br>One West Boylston Street<br>Worcester, MA 01605<br>*Attorney for Experian Information Solutions, Inc.* |

**Dawn May Jenkins**
33 Eastern Avenue
Unit 2
Lynn, MA 01902

Dated:  April 24, 2013.

/s/ Jason B. Curtin
Jason B. Curtin